WATCHTOWER BIBLE & TRACT SOCIETY, INC., et al., Appellants, *v.*
METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

Argued March 18, 1948; decided April 22, 1948.

*Hayden C. Covington* for appellants.  I. The regulation is void because it abridges freedoms of speech, press and worship, contrary to the State and Federal Constitutions.  (*City of Blue Island* v. *Kozul,* 379 Ill. 511; *Cantwell* v. *Connecticut,* 310 U. S. 296; *Saidel* v. *Village of Tupper Lake,* 254 App. Div. 22; *Fisher Co.* v. *Woods,* 187 N. Y. 90; *People ex rel. Tyroler* v. *Warden of Prison,* 157 N. Y. 116; *Colon* v. *Fisk,* 153 N. Y. 188; *Schneider* v. *New Jersey,* 308 U. S. 147; *Thornhill* v. *Alabama,* 310 U. S. 88.)  II. The regulation should be considered as an ordinance of a municipality, rather than as a covenant between landlord and tenant, in determining the test to be applied. (*Bloomfield* v. *Charter Oak Bank,* 121 U. S. 121; *Williams* v. *Eggleston,* 170 U. S. 304; *Jamison* v. *Texas,* 318 U. S. 413; *Marsh* v. *Alabama,* 326 U. S. 501; *Lovell* v. *Griffin,* 303 U. S. 444; *Jamison* v. *Texas,* 318 U. S. 413; *Martin* v. *Struthers,* 319 U. S. 141; *Thousand Island Park Assn.* v. *Tucker,* 173 N. Y. 203; *Cummings* v. *Missouri,* 4 Wall. 277.)  III. Door-to-door preaching and distribution of bible literature is protected by the Constitutions.  (*Murdock* v. *Pennsylvania,* 319 U. S. 105; *Schneider* v. *New Jersey,* 308 U. S. 147; *Lovell* v. *Griffin,* 303 U. S. 444; *Martin* v. *Struthers,* 319 U. S. 141.)  IV. The exercise of civil rights from door to door among tenants living in multiple dwellings or apartments is as strongly protected against abridgment by the Constitution as is the exercise of the same activity from door to door among tenants of single dwellings.  (*Kitching* v. *Brown,* 180 N. Y. 414; *Hague*

v. *C. I. O.*, 307 U. S. 496; *Jamison* v. *Texas*, 318 U. S. 413; *Marsh* v. *Alabama*, 326 U. S. 501; *Tucker* v. *Texas*, 326 U. S. 517; *Schneider* v. *New Jersey*, 308 U. S. 147; *Cantwell* v. *Connecticut*, 310 U. S. 296; *Largent* v. *Texas*, 318 U. S. 418; *Murdock* v. *Pennsylvania*, 319 U. S. 105; *Follett* v. *Town of McCormick*, 321 U. S. 537; *People* v. *Barber*, 289 N. Y. 378.) V. The regulation abridges said fundamental freedoms because it expressly prohibits such door-to-door calls in Parkchester. (*Jones* v. *Opelika*, 319 U. S. 103; *Jamison* v. *Texas*, 318 U. S. 413; *Schneider* v. *New Jersey*, 308 U. S. 147; *Thornhill* v. *Alabama*, 310 U. S. 88; *Carlson* v. *California*, 310 U. S. 106; *Near* v. *Minnesota*, 283 U. S. 697.) VI. The regulation abridges fundamental freedoms because it imposes a burden upon personal visits by missionaries at homes of the tenants, which are protected by the Constitutions, and also implicitly prohibits door-to-door calls in Parkchester. (*Town of Green River* v. *Fuller Brush Co.*, 65 F. 2d 112; *People* v. *Bohnke*, 287 N. Y. 154.) VII. The regulation is unreasonable, arbitrary and capricious and is beyond the authority conferred by law and through the lease agreement with respondent's tenants. (*Thousand Island Park Assn.* v. *Tucker*, 173 N. Y. 203; *People* v. *Barber*, 289 N. Y. 378; *Massachusetts* v. *Richardson*, 313 Mass. 632; *Williams* v. *Lubbering*, 73 N. J. L. 317.)

*Stuart N. Updike, James W. Rodgers, John R. Schoemer, Jr.,* and *Philip T. Seymour* for respondent. I. The provisions of the State and Federal Constitutions relating to the freedoms of speech, press and worship are limitations upon the powers of the State and Federal Governments exclusively and are not applicable to the policies or actions of a private corporation. (*United States* v. *Cruikshank*, 92 U. S. 542; *De Jong* v. *Oregon*, 299 U. S. 353; *West Virginia St. Bd. of Education* v. *Barnette*, 319 U. S. 624; *Murdock* v. *Pennsylvania*, 319 U. S. 105; *Cantwell* v. *Connecticut*, 310 U. S. 296; *Schneider* v. *New Jersey*, 308 U. S. 147; *Lovell* v. *Griffin*, 303 U. S. 444; *Matter of Virginia*, 100 U. S. 339; *Corrigan* v. *Buckley*, 271 U. S. 323; *Hodges* v. *United States*, 203 U. S. 1; *Bridges* v. *California*, 314 U. S. 252; *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, Inc.*, 312 U. S. 287; *Matter of Kempf*, 252 App. Div. 28, 278 N. Y. 613.) II. Defendant is a private corporation operating a pri-

vate project. It is vested with no governmental powers and it exercises none. (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Matter of Murray* v. *LaGuardia*, 291 N. Y. 320.) III. The decisions in *Marsh* v. *Alabama* (326 U. S. 501) and *Tucker* v. *Texas* (326 U. S. 517) are not inconsistent with the judgments below. Judged by any standards, constitutional or otherwise, the action of defendant in conditionally excluding Jehovah's Witnesses from the interior passageways of its apartment houses does not violate any of their legal rights. (*Hague* v. *C. I. O.*, 307 U. S. 496; *Jamison* v. *Texas*, 318 U. S. 413; *Schneider* v. *New Jersey*, 308 U. S. 147; *People* v. *Bohnke*, 287 N. Y. 154; *Follett* v. *McCormick*, 321 U. S. 573; *Murdock* v. *Pennsylvania*, 319 U. S. 105; *Douglas* v. *Jeannette*, 319 U. S. 157; *Largent* v. *Texas*, 318 U. S. 418.) IV. Jehovah's Witnesses were not invitees of the Parkchester tenants, either expressly or by implication. Defendant's regulation excluding them from the apartment buildings unless invited, is authorized by law, by defendant's leases with its tenants and is reasonable. Entries by Jehovah's Witnesses after defendant's notification to them to stay out were trespasses. (*Wood* v. *Snider*, 187 N. Y. 28; *Adams* v. *Freeman*, 12 Johns. 408; *Brendlin* v. *Beers*, 144 App. Div. 403.) V. The entries of Jehovah's Witnesses are conditionally prohibited by defendant's regulation adopted pursuant to lease authority from the tenants. These entries after notice of the regulation and without compliance with its requirements were trespasses. (*Alabama Fuel & Iron Co.* v. *Courson*, 212 Ala. 573; *Thousand Island Park Assn.* v. *Tucker*, 173 N. Y. 203; *Federal Waste Paper Corp.* v. *Garment Center Capitol*, 268 App. Div. 230, 294 N. Y. 714.)

DESMOND, J. Defendant, as a private proprietor, owns in the borough of The Bronx in New York City, a residential community called Parkchester, which is said to be the largest of its kind in the world, covering 129 acres and housing 12,000 family units made up of some 35,000 people, in 171 adjoining and "interrelated" apartment houses. These buildings are seven to twelve stories high. Through Parkchester run two public highways and in it are a number of private streets, lanes and parks, as well as shops, offices, and automobile service stations, the latter operated by tenants of defendant. All of the apart-

ments are held under written leases from defendant. Each such apartment lease binds the tenant to comply with such rules and regulations as the landlord shall from time to time deem necessary for the safety and care of the buildings, " and the preservation of good order therein, as well as the comfort, quiet, and convenience of other occupants of the building." Defendant's written regulation which appellant here attacks has been in force since 1946, and a quite similar written regulation was in existence since 1944, before which, from the opening of Parkchester in 1940, there had been an oral ruling of the same tenor. The current regulation is in full as follows: " No person or group of persons shall enter any apartment building in the Parkchester development for the purpose of canvassing or of vending, peddling, or soliciting orders for any merchandise, device, book, periodical, pamphlet, circular, or for any printed, mimeographed, multigraphed or typewritten matter whatsoever; nor for the purpose of soliciting alms, donations, or a subscription or a contribution to any church, religious, charitable, or public institution or organization whatsoever; nor for the purpose of distributing any handbill, pamphlet, circular, tract, book, booklet, notice, or advertising matter; nor for the purpose of playing any phonograph or musical instruments in said apartment houses in connection with such canvassing, vending, peddling, solicitation or distribution; provided, however, that such canvassing, vending, peddling, soliciting or distribution may be made with the consent of the Manager of the development or may be made within the apartment of any tenant if the prior written consent or invitation of such tenant shall have previously been furnished or exhibited to the Manager of the development."

Plaintiff Watchtower Bible and Tract Society, Inc., is the incorporated governing body of a religious group known as Jehovah's Witnesses, the ministers of which group make it their practice, besides handing out leaflets on the streets, to go from door to door distributing literature, and, who, by oral persuasions, or by the use of portable phonographs, seek thus to interest people in the religious beliefs of Jehovah's Witnesses. The individual plaintiffs are three of such ministers. This suit was brought to have it adjudged that defendant's regulation, quoted above, infringes the constitutional rights of

plaintiffs, and that they have an absolute right, despite the regulation, to go at will through any or all the apartment buildings of Parkchester, to propagate their religious beliefs.

It was established by proof on the trial, and found by the Trial Justice, that teams of Jehovah's Witnesses made sporadic visits to these apartment buildings from 1941 to 1944, and that, beginning in the latter year, the visits took place weekly, or several times a month. Some tenants seem to have accepted the literature willingly, but a number of others made complaints to defendant, which instructed its guards to prevent the Witnesses from going into or through the buildings. In March, 1946, defendant sent to each of its tenants a questionnaire calling for an answer as to whether that tenant wished to be visited by Jehovah's Witnesses. Up to the time of commencement of this action about 8,000 replies had come in, and during the pendency of the cause 3,400 more were filed. Of all the tenants who answered, about 11,000 said they did not want the visits continued, and only about thirty said " yes ". Defendant submitted all this data to plaintiffs and offered to allow a continuation of the Witnesses' visits to the thirty tenants who desired them. After the present lawsuit had been started, a large group of Jehovah's Witnesses, more than 700 in all, came to Parkchester and insisted on going, through the interior passageways of the buildings, to every apartment to present each tenant with a letter signed by the corporate plaintiff, in which was contained a request that the tenant certify to defendant that he did not object to the visits. Of the approximately 8,000 persons thus summoned to their doorways in the apartment houses, a good many complained to defendant's " Protective Division ", and a few testified on the trial as to the persistency of the demands and the inconvenience suffered by the tenants. More than 1,700 signatures were gotten by plaintiffs, about 1,500 being signatures of tenants. Some of those who thus signed testified at the trial that they had done so out of courtesy only, or to be free of the importunities of the callers.

On the facts above summarized, the Trial Justice held that defendant's regulation was reasonable and valid and not in violation of any rights of plaintiffs, pointing out that no case

has held " that Jehovah's Witnesses, or others having similar pursuits, have a constitutional right to enter *within* an apartment house or multiple-dwelling house, against the wishes of its owner or occupants." (188 Misc. 978, 986.) Judgment was entered, dismissing the complaint and affirmatively declaring that defendant's regulation is reasonable and valid, that the regulation has been lawfully and properly applied against plaintiffs, that the regulation leaves to each tenant the right to determine for himself whether he wishes to be called upon by Jehovah's Witnesses, and that the Witnesses who enter the Parkchester apartment houses in contravention of the regulation are trespassers whom defendant has the right to remove, it being expressly adjudged, however, that nothing contained in the decree was to be construed so as to prevent visits by the Witnesses to the apartments of those tenants who have expressed, or hereafter may express, willingness to receive such callers. The Appellate Division, on plaintiffs' appeal, unanimously affirmed the judgment, and plaintiffs appeal to this court as of right (Civ. Prac. Act, § 588, subd. 1, par. a), since there is directly involved the construction of the Constitutions of this State and of the United States (U. S. Const., 1st and 14th Amendts.; N. Y. Const., art. I, §§ 3, 8).

Though we are in full agreement with the holdings of the Trial Justice as expressed in his written decision, we write this opinion to make further comment on certain United States Supreme Court decisions, pressed on us by appellants, and a decision of our own, which is of some pertinence.

In May, 1943, the Supreme Court decided *Martin* v. *Struthers* (319 U. S. 141). That decision struck down as invalid a municipal ordinance which absolutely forbade any person to knock on a door, ring a doorbell or otherwise summon to the door the occupants of any dwelling for the purpose of distributing to those occupants any handbills or circulars (regardless of the householder's wishes). Appellant Martin, a Jehovah's Witness, was convicted and fined for violating the ordinance in that she had knocked at a Struthersville door for the purpose of handing out an invitation or leaflet advertising a religious meeting of her faith. The Supreme Court held that this prohibitory ordinance, so applied, violated the constitutional rights,

under the First and Fourteenth Amendments, of those desiring to distribute such literature, and those desiring to receive it. In a footnote to the *Martin* v. *Struthers* opinion, there is a reference (319 U. S. at p. 148) to our case of *People* v. *Bohnke* (287 N. Y. 154) in which the Supreme Court had, on April 13, 1942, denied a petition for a writ of certiorari (316 U. S. 667, rehearing denied 316 U. S. 713). Appellants here insist that the *Bohnke* decision (*supra*) of this court is in conflict with *Martin* v. *Sruthers* (*supra*) and similar cases, and, particularly, that the rule of the *Bohnke* case has been (*sub silentio* and despite the denial of certiorari) overruled or disapproved by two more recent decisions, both announced on January 7, 1946: *Marsh* v. *Alabama* (326 U. S. 501) and *Tucker* v. *Texas* (326 U. S. 517).

*People* v. *Bohnke* (*supra,* p. 157) affirmed the conviction of a member of plaintiff's group, for violating a village ordinance which provided, among other things, that, without the consent of the occupant, no person should enter upon private residential property for the purpose " of distributing any handbill, pamphlet, tract, notice or advertising matter ", there being an express exception in favor of those who had resided or maintained a business place in the village for six months. Bohnke, an authorized minister of the Jehovah's Witnesses' religion, circulated religious pamphlets from door to door in the village, without previous consent by any householder. We held the ordinance valid, with this comment (pp. 158–159) : " It does not prohibit pamphleteering. It regulates pamphlet distribution in private, not public, places, and gives no public officer any power of censoring the pamphlets or licensing, or refusing to license, their distribution. (See *Cox* v. *New Hampshire,* 312 U. S. 569, 574 ; *People* v. *Kuc,* 272 N. Y. 72, 74 ; *Town of Green River* v. *Fuller Brush Co.,* 65 Fed. Rep. [2d] 112.) It does not infringe any of appellants' rights to the free exercise of their religion since it merely regulates their entry onto private property for the purpose of promoting their religious beliefs. It does leave to the pleasure of the individual householder the determination of whether or not pamphlets may be circulated on that householder's premises, but this infringes no right of appellants, since the Constitution does not guarantee them any right to go freely onto private property for such purposes."

By *Marsh* v. *Alabama* (*supra*) there was reversed the conviction of another Jehovah's Witness. The Alabama courts had found him guilty of violating an Alabama trespass statute which made it a crime to enter or remain on the premises of another after having been warned not to do so. Marsh's activities all took place on a sidewalk in Chickasaw, Alabama, a " company town " wholly owned by a shipbuilding corporation. The sidewalk on which Marsh stood as he passed out his pamphlets was thus owned by the corporation, but it was, in appearance and use, an ordinary public sidewalk in front of retail stores. Justice BLACK's opinion noted that *Lovell* v. *Griffin* (303 U. S. 444) and other cases (see *People* v. *Barber,* 289 N. Y. 378) had made it plain that a municipal corporation cannot ban the distribution of literature on its " streets, sidewalks and public places ". The same rule, for the same reasons, held the Supreme Court, applied to the sidewalks of Chickasaw, which differed from similar sidewalks in other municipalities, only in that in Chickasaw title to the sidewalks was in a private corporation.

*Tucker* v. *Texas* (*supra*) was a companion case to *Marsh* v. *Alabama* (*supra*), differing only in the circumstance that Hondo Navigation Village in Texas, was owned in its entirety, not by a business corporation, but the United States of America. " According to all indications ", the Supreme Court remarked, " the village was freely accessible and open to the public and had the characteristics of a typical American town." (Pp. 518–519.) The Federal Public Housing Authority's manager in charge of the place had " ordered appellant to discontinue all religious activities in the village " and on appellant's refusal, he was arrested, tried and convicted under a section of the Texas Penal Code which makes it an offense for any " peddler or hawker of goods or merchandise " willfully to refuse to leave premises after having been notified to do so by the owner or possessor thereof — a so-called " trespass after warning " statute. While not specifically so stated in the opinion, it seems clear that Tucker's preaching and leaflet distribution was in the streets or sidewalks of the village, or from door to door, and not inside any residential building.

Both the *Marsh* and the *Tucker* cases (*supra*) seem to rest on the doctrine so clearly stated in *Hague* v. *C.I.O.* (307 U. S. 496, at p. 515): " Wherever the title of streets and parks may rest,

they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." A narrow inner hallway on an upper floor of an apartment house is hardly an appropriate place at which to demand the free exercise of those ancient rights.

Our purpose in thus briefly analyzing those decisions is to show that they do not (nor do any others of which we know) go nearly so far as appellants would have us go here. Parkchester, like Chickasaw, Alabama, and the Federal housing community in Texas, is privately owned, but there the similarity as to facts ends. It is undisputed that this defendant has never sought in any way to limit the Witnesses' activities on the streets or sidewalks of Parkchester, some of which are privately, and some publicly, owned. The distribution which this defendant's regulation inhibits was not on streets, sidewalks or other public or quasi-public places, but inside of, and into, the several floors and inner hallways of multiple dwellings. Moreover, defendant's regulation did not absolutely debar these ministers from their visits in the buildings and their persuasions therein, since it allowed them, whenever a tenant so desired, and expressed his desire. We think the *Bohnke* case (*supra*) is still the law and leaves valid the regulation of door-to-door calls along public streets. But, regardless of the *Bohnke* ruling, no case we know of extends the reach of the Bill of Rights so far as to proscribe the reasonable regulation, by an owner, of conduct inside his multiple dwelling. So holding, we need not examine the larger question of whether the pertinent clauses of the Constitutions have anything to do with rules made by any dwelling proprietors, governing conduct inside their edifices.

Turning to another question, we hold that this sort of regulation, as here written and as applied to plaintiffs, was not unreasonable (see *Brendlin* v. *Beers*, 144 App. Div. 403). Neither *Thousand Island Park Assn.* v. *Tucker* (173 N. Y. 203) nor *Federal Waste Paper Corp.* v. *Garment Center Capitol, Inc.* (294 N. Y. 714) holds otherwise. Those cases dealt with wholly

different problems. In each of them the right enforced was that of a business invitee of the tenants to enter the property for the tenants' use and convenience, as against a ban imposed by the owner, for the owner's own profit.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, THACHER, FULD and DYE, JJ., concur.

Judgment affirmed.