THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM R. THORPE and LEWIS VAN DYK, Defendants.

City Magistrate's Court of New York, Borough of Manhattan, Upper Manhattan Arrest Court, March 28, 1950.

*Emanuel L. Kayman* for Arthur J. Du Bois, complainant.

*Hayden C. Covington* for defendants.

BUSHEL, M. Defendants are charged with the offense of disorderly conduct in violation of section 722 of the Penal Law. They are members of a religious group known as Jehovah's Witnesses. Each of these defendants asserts that he is a minister of the gospel and preaches from door to door under the direction of the Watchtower Bible and Tract Society, Inc., a corporation established by law for religious purposes.

Defendants entered the Endicott Hotel located at 81st Street and Columbus Avenue, New York City, at 10:30 A.M. on Saturday morning, February 4, 1950. The defendant Thorpe proceeded to the second floor and the defendant Van Dyk to the top floor of the hotel. Each went from door to door down the hotel corridors, knocking to gain the attention of the hotel guests, and, upon the door being opened, sought to impart to each person thus approached the religious doctrines advocated by the Jehovah's Witnesses. Literature was tendered by the defendants consisting of a book, booklet and magazine. Contributions if not actively solicited, were certainly encouraged and, in any event, were admittedly accepted.

The defendants continued their mission until halted by the hotel manager. They conducted their activities as quietly as possible and seemingly without undue annoyance to the hotel residents. When the hotel manager learned of their presence, he asked the defendants summarily to desist. The defendant

Thorpe explained that he considered it his constitutional right to preach from door to door which was, he claimed, established as an appropriate method of preaching in accordance with the tenets of his faith. The defendants refused to leave the hotel, whereupon a police officer was summoned who, upon arrival, informed the defendant Thorpe that the hotel management had a right to insist that the defendants' activities stop and that they forthwith leave the hotel. Defendant replied that he had a right to stay there and, admittedly, told the officer then in uniform, " if I was to leave, he would have to put me under arrest."

In the meantime, the hotel manager located the defendant Van Dyk pursuing his activities on one of the upper floors. He was requested to leave the hotel. Defendant Van Dyk thereupon went down to the hotel lobby with the manager and joined the police officer and defendant Thorpe, who had been escorted by the policeman to the street. The hotel manager admonished the defendants that they could not return to the hotel. The defendants accompanied the officer to a police telephone call box. The officer, after speaking to his sergeant on the telephone, advised the defendants that they had no right to return to the hotel. Defendants insisted that it was their right to preach in the hotel and, admittedly, " returned shortly to the hotel with the intention of resuming their preaching activity." Indeed, defendant Van Dyk, prior to the arrest, made a telephone call from the hotel lobby to secure legal advice as to the right to preach in the hotel.

As the able brief submitted by defendants' counsel indicates, this case presents another facet of the legal problems presented by the activities of the Jehovah's Witnesses which have reached our highest courts. It is urged that a conviction will result in abridgement of the liberties of press and worship guaranteed by the First and Fourteenth Amendments of the United States Constitution and by the Constitution of the State of New York.

It was long ago held that, " from the very nature of the business it is inevitable " that a hotel owner " must, at all reasonable times and for all proper purposes " have " control over every part " of the hotel " even though separate parts thereof may be occupied by guests for hire " (*de Wolf* v. *Ford,* 193 N. Y. 397, 402). The hotel management rightfully may exercise control designed to serve the convenience, comfort or safety of guests and their property (28 Am. Jur., Innkeepers, § 42, p. 566). A person who is not a guest " has in general no legal right to enter or remain " in the hotel against the will of the management (43 C. J. S., Innkeepers, § 11, p. 1152).

The hotel management may guard against the possible dangers and annoyances of trespasses or unsolicited visits and to that end it may, and it is common knowledge that it usually does, exclude all uninvited visitors from the private hotel corridors and from gaining access to the private accommodations of the hotel guests, regardless of whether the one excluded is actually engaged in an otherwise lawful mission, be it commercial, political or religious.

It was entirely proper for the hotel management to enforce that policy here. That some or even many of the hotel guests may not have found the preaching activities of the defendants objectionable did not deprive the hotel manager of the right to compel observance of such policy (Cf. *Watchtower Bible & Tract Soc.* v. *Metropolitan Life Ins. Co.,* 297 N. Y. 339).

There is no need to disagree with the contention in defendants' brief that a hotel " is a private place and the fact that invitees of guests may come and go out of the hotel by the hundreds and thousands each day does not change the legal status of the property." It is likewise therein acknowledged that the term " public place " is relative; indeed " what is a public place for one purpose is not for another." (48 C. J., Place, § 12, p. 1215.)

The hotel manager, in stopping defendants' preaching activities and in requesting them to leave the hotel, infringed no rights of the defendants, " since the Constitution does not guarantee them any right to go freely onto private property for such purposes " (Cf. *People* v. *Bohnke,* 287 N. Y. 154, 159). More recently the Court of Appeals stated unanimously that, " no case we know of extends the reach of the Bill of Rights so far as to proscribe the reasonable regulation, by an owner, of conduct inside his multiple dwelling " (*Watchtower Bible & Tract Soc.* v. *Metropolitan Life Ins. Co.,* 297 N. Y. 339, 348, *supra*). The court held that " a narrow inner hallway on an upper floor of an apartment house is hardly an appropriate place at which to demand the free exercise of those ancient rights " (p. 348). Judge Desmond who wrote for the court observed, " we think the *Bohnke* case (*supra*) is still the law " (p. 348). The correctness of that view is reflected in the subsequent denial of certiorari by the Supreme Court (335 U. S. 886, rehearing denied 335 U. S. 912).

Greater vigilance is normally demanded and expected of a hotel, in the adoption of measures designed to serve the comfort, convenience and especially the privacy of its guests, as well as their safety and the safety of their property.

The hotel manager, hence, rightfully halted the defendants' preaching activities and justifiably summoned police aid in ejecting them from the hotel. After they were ejected, and notwithstanding that they were admonished not to return to the hotel by the police officer, the defendants, nonetheless, did return for the express purpose of proceeding with their activities, announcing that they proposed to do so unless arrested. In that situation the hotel manager and the police officer were faced with the necessity of offering physical resistance on the street to re-entry of the defendants. Defendants' course, therefore, was calculated to occasion a breach of the peace (*People* v. *Hipple,* 263 N. Y. 242, 244). It is not prerequisite to arrest on a charge of disorderly conduct that a breach of the peace shall have actually occurred (*People* v. *Feiner,* 300 N. Y. 391, decided March 2, 1950). The defendants' conduct '' at the very least, was such that it tended to disturb the public peace and quiet and to occasion a breach of the peace. That, under our cases, is sufficient.'' (*People* v. *Feiner, supra,* p. 399.)

The police officer's admonition to the defendants that they do not return to the hotel to continue their preaching activities was under the circumstances here present '' a useful precaution to avoid possible disturbance '' (*People* v. *Galpern,* 259 N. Y. 279, 284). The defendants' refusal to accede to the request of the police officer and their defiance and disregard of his instructions were calculated '' to annoy, disturb, interfere with, obstruct, or be offensive to others '' within the purview of subdivision 2 of section 722 of the Penal law. The police officer was, therefore, justified in arresting the defendants at their invitation. The evidence establishes their guilt of disorderly conduct. The defendants are found guilty. Sentence suspended .