Bushel, M.
The defendants are accused of violating clause (b) of subdivision 2 of section 101 of the New York State Defense Emergency Act (L. 1951, ch. 784, as amd.) which makes it a misdemeanor to disobey any official order of a person duly authorized, concerning the conduct of civilians and the movement and cessation of pedestrians and vehicular traffic.
At the outset defendants posed a challenge to the jurisdiction of the Magistrate’s Court to hear and determine any charges declared by law to be a misdemeanor. The jurisdictional objection was overruled (People v. Parilli, 1 Misc 2d-).
*203 A sufficient time was allowed to ‘ ‘ give these defendants ample time, in view of the importance of the constitutional challenge ” as to jurisdiction “ to continue such challenge by a proceeding under article 78 of the Civil Practice Act in the nature of the ancient writ of prohibition or by such other means as defendants may be advised ’ ’ (supra, p.-). Defendants, however, elected to proceed before me but, of course, continued to urge the jurisdictional objection which I have held and still hold to be untenable.
Certain of the defendants entered a plea of guilty; the charges against some were dismissed; the others pleaded “ not guilty ” and proceeded to trial.
On June 15,1955, a civil defense air raid drill was promulgated pursuant to appropriate official directives issued to and by the heads of all city departments and agencies engaged in civil defense and to all commands of bureau headquarter divisions, women’s bureau auxiliary police, police department, division of civil defense and auxiliary police.
Defendants, a group of avowed pacifists, congregated at City Hall Park shortly before the time set for the sounding of the air raid sirens signalizing the commencement of the drill. The willful purpose of the defendants to disobey the official orders issued in connection with the drill conducted under the New York State Defense Emergency Act is conclusively established by the following testimony (Dr. Muste):
“ Q Didn’t you and the other defendants go to City Hall with the specific intentions that when the air raid was sounded you would not go to any shelter?
“A We were determined that we would not participate in the air raid.
“ Q You mean you would stay there?
“A Correct.
“ Mr. Greemawalt : There’s no question about that.
“ The Court: You admit that?
‘ ‘ Mr. Greehawalt : Why, certainly. ’ ’
The reason for this willful disobedience was expressed as follows by the same witness: ‘ ‘ The drill was a part of war preparation under the Emergency Defense Act which plainly states that the act and what was done under it is a part of war preparation. It did not apply to an actual and present danger and just as a pacifist, I could not submit for example, to military conscription, neither could I obey orders under a law drawn for the purpose of preparing this country for defense including defense by atomic and biological weapons in war. The concept *204 that we can be defended or that it is morally right to be defended is contrary to my practical convictions and to my Christian faith. ’ ’ Defendants, admittedly, refused to obey police instructions to take shelter:
“ Q Did you hear him state that there would be an air raid drill?
“A I heard officers state that there was a raid and people were told to take shelter.
“ Q Isn’t it a fact after hearing this you stayed where you were?
“ A Yes, sir.”
However, not all defendants were motivated by religious scruples. Although divers defendants were members of an organization known as the War Resisters League, certain of them preferred to base their activities on other than religious grounds, as the following testimony (Ralph Digia) evinces:
“ Q Now, will you give the explanation?
“ A My grounds were based on humanitarian, ethical reasons.
“ .Q You mean the same as moral, as ethical — you mean as distinguished from a denominational religious ground?
“ A From a religious reason.”
Defendants’ counsel elicited this testimony from the same witness, the office manager of the War Resisters League:
“ Q Now, Mr. Digia, in order to try to shorten this thing we have asked you if you agree substantially with Dr. Muste’s testimony and you told me there is one point you’d like to clarify.
“A Yes, sir.
“ Q Will you tell us what that is please?
“ A Well, Dr. Muste pointed out the religious motivation of people Avho partook and I wanted to bring out that there were non-religious people involved in this thing.
“ Q I think you did bring that out. Are there both religious and non-religious people connected with the War Resisters League ?
‘ ‘ A Yes, there are.
“ Q You are one of the non-religious people?
“ A Yes.”
It is clear, that whether religious or nonreligious, defendants as pacifists, intended to and did willfully disobey the official orders incident to the air raid drill that was being conducted under the Nbav York State Defense Emergency Act.
At the conclusion of the trial, and in defendants’ brief,-it was and is urged that abridgment of the defendants’ activities at *205 the time of the air raid drill which were designed as a protest against war, was in violation of their constitutional rights and involved ‘ ‘ prohibition of the free exercise of religion and conscience ”, Other applicable provisions of the Bill of Bights also cited and stressed, include those guaranteeing freedom of speech, the right peaceably to assemble and to petition the government.
The free exercise of religion is, of course, guaranteed by the First Amendment to the Constitution of the United States and, likewise, by section 3 of article I of the Constitution of this State, but the right so secured, as our State Constitution aptly points out, does not “ justify practices inconsistent with the peace or safety of this state ” (art. I, § 3). In Cantwell v. Connecticut (310 U. S. 296, 303, 304) Mr. Justice Egberts pointed out that the constitutional safeguard here invoked “ embraces two concepts, — freedom to believe and freedom to act ” and, appropriately observed that “ [t]he first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society.”
Indeed long ago it was noted by the Supreme Court that “ [1] aws are made for the government of actions, and while they cannot interfere with mere religious belief and opinions, they may with practices ” (Reynolds v. United States, 98 U. S. 145, 166). I have heretofore had occasion to hold that certain religious activities (as distinguished from religious beliefs) although peaceably and devoutly conducted, in good faith, may nonetheless give rise to a criminal charge of misdemeanor and result in conviction notwithstanding defendant’s contention that such “ conviction will result in abridgment of the liberties of press and worship guaranteed by the First and Fourteenth Amendments of the United States Constitution and by the Constitution of the State of New York ” (People v. Thorpe, 198 Misc. 462, 464). To paraphrase the language of the Court of Appeals in Watchtower Bible &Tract Soc. v. Metropolitan Life Ins. Co. (297 N. Y. 339, 348) this court knows of no ease which extends the reach of the Bill of Bights to the activities of these defendants so as to grant sanction and immunity for a willful violation of law.
One.can readily share defendants’ abhorrence of war. All of the appropriate provisions of the Bill of Bights may be invoked to further the legitimate objectives of this or any other group of pacifists. However, City Hall Park at the time of an air raid drill promulgated in the interests of national defense was *206 ‘1 hardly an appropriate place at which to demand the free exercise of those ancient rights ” (Watchtower Bible & Tract Soc. v. Metropolitan Life Ins. Co., supra, p. 348).
The air raid drill and the official directives and orders issued in connection therewith were well within the purview of the legislation here involved (New York State Defense Emergency Act, § 3, subd. 3).
Accordingly, I find all remaining defendants guilty. Considering the circumstances I believe that this conviction will give defendants adequate warning that motives, however sincere or worthy, cannot ‘ ‘ justify practices inconsistent with the peace or safety of this state ”. Sentence is suspended.