## TUCKER v. TEXAS.

No. 87. Argued December 6, 1945.—Decided January 7, 1946.

*Mr. Hayden C. Covington,* with whom *Mr. Grover C. Powell* was on the brief, for appellant.

No appearance for appellee.

MR. JUSTICE BLACK delivered the opinion of the Court.

The appellant was charged in the Justice Court of Medina County, Texas, with violating Article 479, Chap. 3 of the Texas Penal Code which makes it an offense for any "peddler or hawker of goods or merchandise" wilfully to refuse to leave premises after having been notified to do so by the owner or possessor thereof. The appellant urged in his defense that he was not a peddler or hawker of merchandise, but a minister of the gospel engaged in the distribution of religious literature to willing recipients. He contended that to construe the Texas statute as applicable to his activities would, to that extent, bring it into conflict with the Constitutional guarantees of freedom of press and religion. His contention was rejected and he was convicted. On appeal to the Medina County Court, his Constitutional contention was again overruled. Since he could not appeal to a higher state court this appeal under § 237 (a) of the Judicial Code, 28 U. S. C. 344 (a) is properly before us. *Largent* v. *Texas,* 318 U. S. 418.

The facts shown by the record need be but briefly stated. Appellant is an ordained minister of the group known as Jehovah's Witnesses. In accordance with the practices of this group he calls on people from door to door, presents his religious views to those willing to listen, and distributes religious literature to those willing to receive it. In the course of his work, he went to the Hondo Navigation Village located in Medina County, Texas. The village is owned by the United States under a Congressional program which was designed to provide housing for persons engaged in National Defense activities. 42 U. S. C., §§ 1521–1553. According to all indications the

village was freely accessible and open to the public and had the characteristics of a typical American town. The Federal Public Housing Authority had placed the buildings in charge of a manager whose duty it was to rent the houses, collect the rents, and generally to supervise operations, subject to over-all control by the Authority. He ordered appellant to discontinue all religious activities in the village. Appellant refused. Later the manager ordered appellant to leave the village. Insisting that the manager had no right to suppress religious activities, appellant declined to leave, and his arrest followed. At the trial the manager testified that the controlling Federal agency had given him full authority to regulate the conduct of those living in the village, and that he did not allow preaching by ministers of any denomination without a permit issued by him in his discretion. He thought this broad authority was entrusted to him, at least in part, by a regulation, which the Authority's Washington office had allegedly promulgated. He testified that this regulation provided that no peddlers or hawkers could come into or remain in the village without getting permission from the manager.[1] Since the Texas Court has deemed this evidence of authority of the manager to suppress appellant's activities sufficient to support a conviction under the State statute, we accept their holding in this respect for the purposes of this appeal.

The foregoing statement of facts shows their close similarity to the facts which led us this day to decide in *Marsh* v. *Alabama, ante,* p. 501, that managers of a company-owned town could not bar all distribution of religious literature within the town, or condition distribution upon a permit issued at the discretion of its man-

---

[1] The available Regulations of the Authority, of which we can take judicial notice, *Bowles* v. *United States,* 319 U. S. 33, 35, do not show a regulation of this kind.

agement. The only difference between this case and *Marsh v. Alabama* is that here instead of a private corporation, the Federal Government owns and operates the village. This difference does not affect the result. Certainly neither Congress nor Federal agencies acting pursuant to Congressional authorization may abridge the freedom of press and religion safeguarded by the First Amendment. True, under certain circumstances it might be proper for security reasons to isolate the inhabitants of a settlement, such as Hondo Village, which houses workers engaged in producing war materials. But no such necessity and no such intention on the part of Congress or the Public Housing Authority are shown here.

It follows from what we have said that to the extent that the Texas statute was held to authorize appellant's punishment for refusing to refrain from religious activities in Hondo Village it is an invalid abridgement of the freedom of press and religion.

We think it only proper to add that neither the Housing Act passed by Congress nor the Housing Authority Regulations contain language indicating a purpose to bar freedom of press and religion within villages such as the one here involved. The case is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

Mr. Justice Jackson took no part in the consideration or decision of this case.

Mr. Justice Frankfurter, concurring.

It will be time enough to consider the constitutionality of an Act of Congress that is claimed to be in defiance of the First Amendment when such legislation by Congress confronts us with the problem. The present case does not present such a situation. Subject to this reservation, I

agree with the opinion of the Court for the reasons briefly stated in *Marsh* v. *Alabama, ante,* p. 510. In the case of communities established under the sponsorship of the United States by virtue of its spending power, it would, I should think, be even less desirable than in the case of company towns to make the constitutional freedoms of religion and speech turn on gossamer distinctions about the extent to which land has been "dedicated" to public uses.

The CHIEF JUSTICE, MR. JUSTICE REED and MR. JUSTICE BURTON, dissenting.

The CHIEF JUSTICE, MR. JUSTICE REED and MR. JUSTICE BURTON construe the record in this case as showing a conviction for refusing, at the request of its authorized agent, to leave premises which are owned by the United States and which have not been shown to be dedicated to general use by the public. We, therefore, would affirm the conviction for the reasons given in the dissent in *Marsh* v. *Alabama, ante,* p. 511.