**UNIVERSITY OF DELAWARE,**
Plaintiff,

v.

**William F. KEEGAN and Michael Szupper,**
Defendants,

and

**Thomas J. Mardaga et al., Intervenors.**

Court of Chancery of Delaware,
New Castle.

March 28, 1974.

John P. Sinclair of Potter, Anderson & Corroon, Wilmington, and Philip B. Kurland and Donald E. Egan of Rothschild, Barry & Myers, Chicago, Ill., for plaintiff.

Arlen B. Mekler of Lindh, Mekler & Evans, Wilmington, for defendants William F. Keegan and Michael Szupper.

James P. Collins of Metten, Healy & Collins, Wilmington, for intervenors Thomas J. Mardaga, William Schauber and Donald Piel.

Joseph A. Rosenthal of Cohen, Morris & Rosenthal, Wilmington, for American Civil Liberties Union, amicus curiae.

MARVEL, Vice Chancellor:

The University of Delaware, plaintiff in this action, seeks a permanent order enjoining the holding of worship services on University property as now sanctioned and/or participated in by the several defendants and others of the Roman Catholic faith, all of whom are involved in an effort to obtain Court approval of the holding of worship services on University property. Such services are presently being conducted, without the consent of the plaintiff, on Sunday mornings between the hours of 10:30 a. m. and 12:00 noon in a University residential building under the terms of a preliminary order which restrains plaintiff from interfering with the holding of such services. Such order was entered by this Court on October 5, 1973 on defendants' application. Plaintiff now seeks permanent injunctive relief against the continuation of such services, which relief, if granted, would, of course, result in the dissolution of the Court's October 5, 1973 order.

Plaintiff bases its opposition to the holding of worship services on its property not only on a provision of its charter (14 Del. C. § 5103) which states: "The University shall never be managed or conducted in the interest of any party, sect or denomination," but also and more basically on the reciprocal provisions of the First Amendment to the Constitution of the United States which guarantee that there shall neither be permitted any governmental establishment of religion nor government interference with an individual's right to religious freedom.

To implement the above cited charter provision the University has also adopted certain regulations concerning campus religious activities, including an October 1, 1971 directive entitled University-Campus Ministry Position Paper which provides in part as follows:

"B. *Use of Space*

Recognized [religious] groups may upon proper registration use space in the Student Center and other buildings for business meetings and social programs but not for worship services."

Defendants challenge the constitutionality of this directive as applied to them,

reliance for the merits of their position also being placed on the provisions of the First Amendment. The case is now before the Court for decision on the pending cross motions for summary judgment, there being no material facts in dispute.

■ Plaintiff, which began as a Presbyterian school in the eighteenth century, was chartered as a college by the State of Delaware in 1833 under the name Newark College. Its name was changed to Delaware College in 1843, and it later qualified as a land grant college. In 1921, plaintiff became a university, and is at present subsidized by public funds appropriated by the Legislature. There is accordingly no doubt but that it is a public institution and thus " * * * an agency of the State of Delaware under the common law and under the constitutional test required by the Fourteenth Amendment. The actions of the Trustees must be judged in that light", Parker v. University of Delaware, 31 Del. Ch. 381, 75 A.2d 225.

Plaintiff now owns and maintains extensive educational and auxiliary facilities in and about the City of Newark, including more than forty buildings in which students reside, two of which are high-rise apartment houses known as the Christiana Towers. These facilities contain furnished apartments, each of which is designed to house from two to four students for terms of up to twelve months. An area designated as the Christiana Commons, which contains mail boxes, recreational facilities, including a lounge area and other rooms for the use of student residents of the Towers and their guests, is located between the high-rise residential towers of the buildings.

Although there are numerous off campus churches and chapels in and about the City of Newark in which religious services, including those of the Roman Catholic faith, are regularly conducted, early in the 1973-

1974 academic term of the University several Roman Catholic students residing in the Christiana Towers requested that worship services of their faith be held in a common room of their dormitory, such request apparently being intially addressed to the defendant Michael Szupper, a Roman Catholic priest as well as a University chaplain.[1] In response to such request, on September 9, 1973, the defendant William F. Keegan, also a Roman Catholic priest, without obtaining or even seeking permission from the University and in clear violation of University policy, celebrated a Sunday morning Mass for Roman Catholic students in the Christiana Commons. The University, through its Dean of Students, thereupon made it clear to Father Keegan that the holding of worship services on University property violated University policy. Such protest, however, was ignored and after other unsuccessful efforts to prevent the continuation of such services, including the locking of the Commons, (which resulted in the holding of Roman Catholic religious service in an area adjoining Christiana Towers), filed this action for injunctive relief against the holding of Roman Catholic worship services on University property.

On September 28, 1973, this Court denied the University's motion for a preliminary injunction. The defendants were thereafter joined by Thomas J. Mardaga, Roman Catholic Bishop of Wilmington as an intervenor and proceeded to file a counterclaim seeking the enjoining of any interference by the University with the conduct of Sunday morning Mass in Christiana Commons. As a result, this Court by order of October 5, 1973 restrained plaintiff " * * * from barring defendants from entering the common room of the Christiana dormitory building of the University of Delaware for the purpose of celebrating Mass on Sundays between the hours of 10:30 a. m. and 12:00 noon, until

---

[1]. The University designates certain clergymen to serve as chaplains for students of different faiths. However, such chaplains are not paid by the University, being recognized merely as advisors to those students who are members of their respective denominations.

further order of the Court * * * ". Such order remains in full force and effect. Since the entry of such order two University students residing in the Christiana Towers have been permitted to intervene as defendants.[2]

■ The fundamental constitutional question here in issue arises out of the need to balance the equities implicit in the reciprocal provisions of the First Amendment to the Constitution of the United States which provides in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * * " 1 Del.C. p. 47. These constitutional guarantees of course apply to action by the State of Delaware and its agent, the plaintiff, as well as to action by the Congress, Parker v. University of Delaware, supra.

Next, while the parties to this litigation concede that they have been unable to find a precise precedent in support of their respective positions, opposing counsel, relying on the provisions of the First Amendment, reach directly opposite conclusions. Thus, the University contends that the establishment clause of the First Amendment compels it to ban worship services on its property, while the defendants and intervenors argue that the free exercise clause of the same amendment guarantees them the right to hold and/or to participate in the worship services now being held in Christiana Commons of which plaintiff complains.

In the case of Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697, the majority of the Supreme Court noted the difficulties inherent in balancing the reciprocal rights guaranteed by the First Amendment, the Court stating:

"The Establishment and Free Exercise Clauses of the First Amendment are not the most precisely drawn portions of the Constitution. The sweep of the absolute prohibitions in the Religion Clauses may have been calculated; but the purpose was to state an objective, not to write a statute . . . The course of constitutional neutrality in this area cannot be an absolutely straight line; rigidity could well defeat the basic purpose of these provisions, which is to insure that no religion be sponsored or favored, none commanded, and none inhibited. The general principle deducible from the First Amendment and all that has been said by the court is this: that we will not tolerate either governmentally established religion or governmental interference with religion. Short of those expressly proscribed governmental acts there is room for play in the joints productive of a benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference."

Seeking to adhere to the principle that government must remain neutral in religious matters, the Supreme Court has endeavored over recent years to establish the thin line which separates the establishment clause from the free exercise clause, the Court having noted that " * * * [t]he line between state neutrality to religion and state support of religion is not easy to locate.", Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060. Nevertheless, despite the difficulties inherent in the job of reconciling the two clauses of the First Amendment here in issue, the Supreme Court of the United States has sought to establish certain tests which serve to guide a trial court.

■ Thus, a policy on plaintiff's part which would foster the holding of religious services on its campus would clearly be an involvement of the state with religion, Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711, Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed.

2. The American Civil Liberties Union was also granted leave to enter an appearance as amicus curiae on behalf of the position taken by the defendants. However, it submitted no briefs and did not participate in argument on the pending motions.

954, McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, and Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L. Ed.2d 601. In the case of Abington School District v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844, however, the Court sought to distinguish between forbidden involvement of the state in religious activities and conduct permitted under the establishment clause, stating:

"The test may be stated as follows: What are the purpose and primary effect of the enactment? If either is the advancement or inhibition of religion then the enactment exceeds the scope of legislative power as circumscribed by the constitution. That is to say that to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion."

Over the past ten years, the above test has been applied to varying situations. See Board of Education v. Allen, supra, and Committee for Public Education v. Nyquist, 413 U.S. 756, 93 S.Ct. 2955, 37 L. Ed.2d 948. In the latter case the Court reviewed the elements to be considered as follows:

"Taken together these decisions dictate that to pass muster under the Establishment Clause the law in question, first, must reflect a clearly secular legislative purpose, second, must have a primary effect that neither advances nor inhibits religion, and, third, must avoid excessive government entanglement with religion."

I conclude in the present case, one in which state action has consisted of the entry of an order requiring that worship services be permitted to continue on plaintiff's property against its will, that the resolution of the question presented for final decision in this Court must depend on a balancing of the equities inherent in the respective positions taken by the opposing parties viewed in light of the relevant Supreme Court decisions.

First of all, I am satisfied that a policy could be formulated and carried out by the University meeting the constitutional requirements above listed, Committee for Public Education v. Nyquist, supra. Thus, periodic worship services of the defendants at Christiana Towers could no doubt be administratively scheduled by plaintiff in the common area here in issue in a manner designed not to interfere with the secular activities of the University and in a way designed to provide time and space to other worship groups or other factions. In such an arrangement, all the University could conceivably be deemed to be furnishing is its public facilities for use by members of its community on a disinterested and impartial basis, Poulous v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105, Tucker v. Texas, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274, Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 328, 95 L.Ed. 267, 280, Kunz v. New York, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280, and Fowler v. Rhode Island, 345 U.S. 67, 73 S.Ct. 526, 97 L.Ed. 828, cases which hold that merely because property is maintained by public funds, the use of such facilities for religious services is not necessarily barred by the establishment clause of the First Amendment.

■ Rather, the First Amendment's establishment clause is concerned with governmental coercion, either subtle or direct, whether concerned with one religion, any religion, or no religion. As stated by Mr. Justice Black in Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982:

"[n]either a State nor the Federal Government can constitutionally force a person 'to profess a belief or disbelief in any religion.' Neither can constitutionally pass laws or impose requirements which aid all religions as against non-believers, and neither can aid those religions based on a belief in the existence of God as against those religions founded on different beliefs."

And, in Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L.Ed.2d 601, the Court stated:

"When the power, prestige and financial support of government is placed behind a particular religious belief, the indirect coercive pressure upon religious minorities to conform to the prevailing officially approved religion is plain."

In other words, the establishment clause does not require state hostility towards religion in its various forms but rather requires the exercise of neutrality towards religion in any form, Abington School District v. Schempp, supra.

Obviously, the University may not constitutionally countenance the celebration of Mass on its property to the exclusion of religious services for students of other faiths. Thus, plaintiff could conceivably avoid conflict with the establishment clause by allowing all groups requesting use of University facilities to have equal access thereto. However, the point here is that the plaintiff is opposed to all worship services on its property, the result being that the question to be answered here is whether or not the Court can insist that defendants' free exercise rights be recognized without running afoul of the prohibition of the establishment clause. And in this regard it is obvious that in the instant case the Court is not concerned either with school children of highly impressionable age or with persons involuntarily incarcerated, Abington School District v. Schempp, supra.

I conclude that while I am of the opinion that it would be constitutionally possible for the plaintiff to arrange an interspersion of secular and religious activities in the common room of Christiana Towers now being used for worship services by defendants by scheduling similar services of any other petitioning religious group, as well as defendants', and meetings of secular groups, an arrangement which could conceivably be so managed as to meet the test of the Supreme Court and not interfere with the educational scheduling and standards of the University, the point is that plaintiff's policy militates against such an effort, plaintiff pointing out that the number of religious groups alone which might ultimately seek worship time on plaintiff's property would present an almost impossible scheduling task for the University. However, and finally, on the basis of the above cited cases plaintiff's reliance on its charter[3] as a basis for an absolute ban against the holding of worship services on its property is not well taken.

The point is thus reached at which the plaintiff, having adopted a policy which bans all worship services from its property, the question remaining to be answered is whether or not defendants may insist, despite such ban, that worship services for members of their faith be permitted to be conducted in Christiana Towers by reason of the free exercise clause of the First Amendment, because even though the establishment clause has been here construed so as to permit the use of plaintiff's property for nondiscriminatory religious services, such right is nugatory unless defendants can demonstrate that the banning of all worship services on its property by plaintiff violates defendants' free exercise rights.

First of all, the Court is not here dealing with the religious rights of those in military service, those in penal servitude or the holding of emergency services on public property during an overwhelming disaster, possibilities discussed by Mr. Justice Brennan in his concurring opinion in Abington School District v. Schempp, supra as follows:

"Since government has deprived such persons of the opportunity to practice

---

**3.** "The University shall never be managed or conducted in the interest of any party, sect, or denomination." 14 Del.C. § 5103.

their faith at places of their choice, the argument runs, government may, in order to avoid infringing free exercise guarantees, provide substitutes where it requires such persons to be. Such a principle might support, for example, the constitutionality of draft exemptions for ministers and divinity students, cf. Selective Draft Law Cases, 245 U.S. 366, 389, 390, 38 S.Ct. 159, 62 L.Ed. 349, of the excusal of children from school on their respective religious holidays; and of the allowance by government of temporary use of public buildings by religious organizations when their own churches have become unavailable because of disaster or emergency."

Rather, the defendants appear to base their claims under the free exercise clause not on the claimed inaccessibility to Roman Catholic students residing in Christiana Towers of other places of worship in Newark but rather on a claimed right to easy accessibility to a place of worship selected by them. In other words, the student defendants and others want the convenience of having worship services carried on in what is, for all intents and purposes, their home for up to nine to twelve months of the year rather than in a church building. It must also be recognized that the defendant students in their status as college students living in a residential dormitory are to be distinguished by more than age from the children involved in Stein v. Oshinsky, (C.A.2) 348 F.2d 999, and Hunt v. Board of Education of County of Kanawha, (S.D.W.Va) 321 F.Supp. 1263, cases in which young students were denied the right to pray in their school houses partly because they had ample opportunity for such religious activity in their own homes both before and after their school day.

■ This does not mean, however, that the University may not impose reasonable restrictions on the use of its property for religious exercises up to and including their prohibition without infringing on the free exercise rights of defendants and intervenors, or that the University must not demonstrate a good reason for such a negative policy, the critical element in a religious liberty case being assessment of the governmental interest, Giannella, Religious Liberty, Nonestablishment, and Doctrinal Development, 80 Harv.L.Rev. 1381.

The burden imposed on government in order to sustain the principle of absolute freedom of religion was discussed in the case of Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965, in which the Court held that improper restraints had been imposed on the free exercise of appellant's religion, namely that practiced by Seventh Day Adventists, by a denial of unemployment conpensation she would otherwise have been entitled to, the Court stating:

"[i]f the purpose or effect of a law is to impede the observance of one or all religions or to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect."

Having found that there had been substantial infringement of appellant's First Amendment right to the free exercise of her religion, the Court then set forth the standard which the state must meet to justify such an infringement upon religious freedom as follows:

"It is basic that no showing merely of a rational relationship to some colorable state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest of abuses, endangering paramount interests, give occasion for permissible limitation,' Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L. Ed. 430."

▮ Therefore, as noted above, in order for this Court to find the University's policy against the holding of any worship service on its property to be unconstitutional the Court must conclude initially that such absolute prohibition constitutes a substantial infringement of defendants' free exercise rights for which the University is unable to offer a compelling justification.

Having found that by banning all worship services on its property plaintiff is neither discriminating among religious groups nor abusing its discretionary authority over its property, McKnight v. Board of Public Education, 365 Pa. 422, 76 A.2d 207, Adderly v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149, Stein v. Oshinsky, supra, and Poulous v. New Hampshire, supra, I therefore am of the opinion that to compel the plaintiff to permit Roman Catholic worship services to be celebrated in Christiana Towers merely in order to suit the convenience of the student intervening defendants and others would be unwarranted, it being clear on the present record that Roman Catholic Masses are regularly celebrated in two churches situate in the City of Newark, namely St. John the Baptist on North Chapel Street and the Newman Center on Lovett Street. And while said churches are situate some two miles from Christiana Towers, it is not, in my opinion, a substantial infringement of the rights of the intervening student defendants and others of their faith freely to worship, according to their faith, to expect them to attend Mass at such established churches or others of their choice rather than in the Christiana Towers.

On notice, an order may be presented granting plaintiff's motion for summary judgment and denying that of defendants. Said form of order should also provide for the dissolution of the preliminary injunctive order which presently restrains plaintiff from banning Roman Catholic Sunday morning worship services in Christiana Towers.