John M. CURTIS, Plaintiff,

v.

ROSSO & MASTRACCO, INC., d/b/a
Giant Open Air Market, Defendant.

Civ. A. No. 76–62–N

United States District Court,
E. D. Virginia,
Norfolk Division.

May 11, 1976.

Henry E. Howell, Jr., Howell, Anninos, Daugherty & Brown, Norfolk, Va., for plaintiff.

Joel A. Kolodny, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

The plaintiff, John M. Curtis, seeks redress for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is an employee of the Retail Clerks International Association. The plaintiff's employer directed him to Norfolk to assist in organizing the employees of the defendant, Rosso & Mastracco, Inc., a supermarket doing business under the name of Giant Open Air Market. On or about September 10, 1975, while Curtis was on the defendant's premises, he was charged with trespassing by the defendant's employees. The Complaint does not aver what the plaintiff was doing when he was charged; however, at oral argument, plaintiff's counsel stated that Curtis was not involved in any solicitation or union activity at the time of arrest. After posting bond, the plaintiff was tried and acquitted of all charges in the General District Court of the City of Norfolk. He now brings the instant suit.

The Complaint states two causes of action. First, plaintiff seeks damages under a claim of common law malicious prosecution. Secondly, plaintiff alleges that he has been deprived of equal protection under the Fourteenth Amendment because he was precluded from exercising his alleged right "to move about freely and peaceably in public places," pursuant to 42 U.S.C. § 1983. He seeks to have the common law claim heard under the doctrine of pendent jurisdiction, whereby ancillary non-federal claims can be heard in the discretion of the Court once jurisdiction has attached under the accompanying federal claim. The case is now before the Court on a motion to dismiss brought by the defendant.

In order for this case to proceed, the Court must decide whether there is sufficient state involvement to fall within the ambit of 42 U.S.C. § 1983 and whether plaintiff has been denied a right secured by the Constitution.

## I
## STATE ACTION REQUIREMENT

Plaintiff contends that there is sufficient governmental involvement to constitute "state action" within the ambit of 42 U.S.C. § 1983. The "state action" requirement is allegedly met by: (1) the plaintiff's arrest and subsequent prosecution; and (2) the type and nature of the facility in which the arrest occurred. Assuming *arguendo* that plaintiff has articulated a constitutional right that has been deprived [see discussion *infra*], it remains the plaintiff's burden to establish that the deprivation occurred by means of state action. The primary thrust of plaintiff's argument attempts to reiterate the scope of constitutional right involved in the instant case. Plaintiff's Memorandum, 3.

■ The existence of impermissible state action must be determined on a case-by-case basis. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). The Supreme Court has recently reassessed the quantum of state action involvement necessary to bring the case within the ambit of the requirement of the Fourteenth Amendment and the Civil Rights Act, 42 U.S.C. § 1981, et seq. In a series of cases commencing with *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), the Supreme Court has analyzed at what juncture a private facility is converted into a public governmentally supervised facility for purposes of guaranteeing the unbridled exercise of constitutional rights. Although this line of cases did not analyze the situs in terms of the state action requirement of 42 U.S.C. § 1983, a different result is not militated because the situs in the instant case and in the Supreme Court decisions is similar.

*Marsh v. Alabama, supra*, held that constitutional rights attached to the leafletting activities of a Jehovah's Witness in a privately owned company town because Chickasaw, Alabama, had "all the characteristics of any American town" in which the disputed activity would be permitted. Relying on *Marsh*, in 1968 the Supreme Court held that union pickets could not be prevented from exercising their First Amendment rights in a private shopping center because it "is the functional equivalent of the Chickasaw business district in *Marsh*." *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968). More recently, the Supreme Court restricted the scope of *Logan Valley* holding that antiwar protesters did not have a constitutionally protected right to distribute handbills in a privately owned shopping center. *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). In this term, however, the Supreme Court has concluded that the rationale of the *Logan Valley* decision did not survive *Lloyd*. *Hudgens v. NLRB*, 507 U.S. 424, 96 S.Ct. 1029, 47 L.Ed.2d 196, 44 U.S.L.W. 4281 (March 3, 1976). The Court cited with approval, the following language from *Lloyd*:

"The argument reaches too far. The Constitution by no means requires such an attenuated doctrine of dedication of private property to public use. The closest decision in theory, *Marsh v. Alabama, supra*, involved the assumption by a private enterprise of all of the attributes of a state-created municipality and the exercise by that enterprise of semiofficial municipal functions as a delegate of the State. In effect, the owner of the company town was performing the full spectrum of municipal powers and stood in the shoes of the State. In the instant case there is no comparable assumption or exercise of municipal functions or power." 407 U.S., at 568–569, 92 S.Ct., at 2228–29, 33 L.Ed.2d, at 142. (footnote omitted).

"We hold that there has been no such dedication of Lloyd's private owned and operated shopping center to public use as to entitle respondents to exercise therein the asserted First Amendment rights . . . ." 407 U.S., at 570, 82 S.Ct., at 2229, 33 L.Ed.2d, at 143.

*Hudgens v. NLRB*, 424 U.S., at 520, 96 S.Ct., at 1036, 47 L.Ed.2d, at 207.

■ It is evident from the most recent decisions emanating from the Supreme

Court that a shopping center or other similarly situated privately owned facilities are not the functional equivalents of a public municipal facility. Therefore, traditional constitutional protections for purposes of the 14th Amendment and § 1983 do not attach to activities conducted in shopping centers.[1]

■ Therefore, from a situs perspective, Giant Open Air Market, a large supermarket, is not imbued with the status of a public facility and the concomitant constitutional safeguards for the purposes of the Fourteenth Amendment. It follows that regardless of the nature of plaintiff's activities, they are not constitutionally sanctioned merely because Giant Open Air Market is a business that solicits members of the citizenry to patronize its facility.

Plaintiff also contends that state action is involved because the defendant invoked the criminal process to secure plaintiff's arrest. Defendant does not deny that its employees precipitated the plaintiff's arrest; however, defendant avers that this involvement is insufficient to meet the requisites of state action for purposes of the Fourteenth Amendment and 42 U.S.C. § 1983. Plaintiff does not allege that the police officer conspired or acted in concert with the defendant. The mere arrest of the plaintiff performed in good faith by the police officer brings this action within the ambit of the Civil Rights Act according to the plaintiff.

■ The Court disagrees with plaintiff's analysis of state action. Decisions discussing state action are not easily compartmentalized to provide a lucid answer. The decisions, nevertheless, demonstrate a flexible standard of state action depending upon the type of state involvement and its pervasiveness, the neutrality or partiality exhibited by the state participation and, most importantly, the nature of the constitutional right in jeopardy. It is the last consideration that the plaintiff has failed to address. For purposes of this opinion, the Court has divided the discussion of the constitutional right in issue and the level of state participation. This bifurcation, however, belies the fact that the analysis of the sufficiency of state action is inextricably grafted to the nature of the constitutional right purportedly vitiated. The level of state action may be *de minimis* when racial discrimination is alleged because the hallmark of the Fourteenth Amendment has been to safeguard against discrimination based on race. *See, e. g. Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). Similarly, state action has been construed more broadly when freedom of speech and association are impeded. *See, e. g. Marsh v. Alabama, supra.* Courts are more likely to find state action and delve into the merits where racial discrimination or freedom of speech are in issue. *See, e. g. Parks v. "Mr. Ford,"* 386 F.Supp. 1251 (E.D.Pa.1975). Plaintiff was not discriminated against on the basis of race or by exercising his First Amendment liberties. Rather, plaintiff conceptualizes the constitutional right as some ephemeral freedom of autonomy in public places. [See discussion *infra.*] The Court believes that the state action threshold is greater in the instant case because of the type of deprivation.

■ Therefore, the proposition before the Court is whether the state action requisite of the Fourteenth Amendment is fulfilled by the plaintiff's arrest on charges of trespass in a context not related to race or expression. The Court concludes that this question must be answered in the negative.

In *Lavoie v. Bigwood,* 457 F.2d 7 (1st Cir. 1972), a case cited by the plaintiff, the Court of Appeals considered this issue. The Court discussed *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948)

---

1. Although the *Hudgens* and *Logan Valley* decisions involved labor disputes and the instant suit has labor overtones, this Court is not relying upon those decisions because of that similarity. Their import to this case is their delineation of the applicability of the Constitution and its protection to privately owned facilities which are publicly accessible. For purposes of the motion to dismiss, the Court accepts as true plaintiff's averment that he was not engaged in labor activity.

("state action" is met by state court enforcement of a racially restrictive covenant) and *Griffin v. Maryland*, 378 U.S. 130, 84 S.Ct. 1770, 12 L.Ed.2d 754 (1964) ("state action" is fulfilled by a sheriff's enforcement of a private park's policy of racial segregation). The First Circuit concluded that, "a state may at the behest of private persons apply sanctions pursuant to general rules of law which have discriminatory as well as non-discriminatory application if it does not accept the responsibility of employing a discriminatory classification. *Lavoie v. Bigwood*, 457 F.2d 7, 11 (1st Cir. 1972). In the above instance, the state would be pursuing a posture of "neutrality" and its participant would be insufficient to the Fourteenth Amendment "state action" requirement.[2]

The pleadings are absent any averment that the state acted in other than a neutral manner. The Court concludes that the state action nexus of the Fourteenth Amendment was not met in the instant circumstances when a police officer arrested the plaintiff within the premises and at the request of the defendant. Plaintiff has failed to demonstrate that the state tottered from its position of neutrality. By this failure, the Court is compelled to grant the motion to dismiss.

## II

## CONSTITUTIONAL DEPRIVATION

■ The pertinent section of the Fourteenth Amendment reads as follows:

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

The equal protection clause is directed against laws of the states that are uneven or unequal as written or as applied, so that there is discrimination against a certain class of the populace or arbitrary enforcement of the law. It operates only on legal rights *otherwise created or existing* and does not itself create any new legal rights, except the general right to equal protection of the law.

■ The legal right alleged to have been violated is the right to move about freely and peaceably in privately-owned establishments which are open to the public.[3] Plaintiff has cited a District Court opinion which states:

"*In my opinion*, a citizen has a protected right to move about freely and peaceably in public places." (emphasis supplied)

*Nanez v. Ritger*, 304 F.Supp. 354, 356 (E.D.Wisc.1969)

The District Court, however, offered no case support for that proposition, and the holding has not been cited by any other Federal court. In fact, the plaintiff was unable to cite any other Federal cases recognizing such a right, and this Court was unable to discover any supporting cases in its research. This Court believes that there is no such generally protected right. The right exists only in a limited context when it is abridged for a constitutionally proscribed discriminatory reasons, such as race, alienage, or, in some instances, sex. Discrimination based upon an individual's union sympathies has not been so proscribed under the equal protection clause of the Fourteenth Amendment.

■ The Federal claim in this instance arises under 42 U.S.C. § 1983 which states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

---

2. In *Lavoie*, the Court approved the State of Maryland's theory in *Griffin, supra*, that the state "may constitutionally enforce an owner's desire to exclude particular persons from his premises" with the caveat that said exclusion is not motivated by racial considerations.

3. Plaintiff does not represent that the defendant has dedicated its store to the public or that the public "possesses" the property by virtue of the access permitted the citizenry.

There are two basic issues confronting the Court in this case. (1) Whether there is a right involved that is "secured by the Constitution and laws," (2) Whether the alleged deprivation was accomplished "under color of any statute, ordinance, regulation, custom, or usage, of any State," *supra* at 2.

The Court must consider whether there was a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," as required by 42 U.S.C. § 1983. The plaintiff argues that he was denied a constitutional right, the right to equal protection. The plaintiff claims that there is a generally recognized right of all citizens to move about freely and peaceably in privately-owned public places, and that when such right is denied an individual for a discriminatory reason, there is a denial of equal protection. Plaintiff contends that the right was abridged when the defendant's employees charged him with trespassing and prosecuted him in the General District Court of Norfolk for the discriminatory reason of his reputation as a union organizer. This action, it is claimed, amounted to a denial of equal protection because the plaintiff was denied the alleged right to move about freely and peaceably in a privately-owned public place for a discriminatory reason while other patrons were allowed to exercise the right without abridgement.

The plaintiff in argument viewed the alleged right as an absolute one. He contended that if the plaintiff in this instance had been discriminated against for any arbitrary reason—length of hair, political views, etc.—there would be a denial of equal protection which would give rise to a suit under 42 U.S.C. § 1983. The law has yet to be extended this far. There is no absolute right under the Constitution to be free from *all* arbitrary and capricious discrimination in a privately-owned establishment that is open to the public.

The other Federal cases cited by the plaintiff to support his proposition are distinguishable because they deal with either constitutionally recognized rights—freedom of the press and freedom of religion—(*Marsh v. Alabama*, 326 U.S. 501,

66 S.Ct. 276, 90 L.Ed. 265 (1946); *Tucker v. Texas*, 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946)) or with statutory rights created under the Interstate Commerce Act pursuant to the commerce clause of the Constitution. (*Boynton v. Commonwealth of Virginia*, 361 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206 (1960); *Mitchell v. United States*, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201 (1941)).

The other claim advanced by Curtis, the malicious prosecution allegation, also fails to present a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. The plaintiff at oral argument agreed that this common law tort was not a basis for Federal jurisdiction, and the Courts have held that malicious prosecution actions are not within the scope of the Civil Rights Act. *Hahn v. Sargent*, 388 F.Supp. 445 (D.Mass.1975), aff'd 523 F.2d 461 (1st Cir. 1975); *Paskaly v. Seale*, 506 F.2d 1209 (9th Cir. 1974); *Martin v. King*, 417 F.2d 458, 462 (10th Cir. 1969); *Curry v. Ragan*, 257 F.2d 449, 450 (5th Cir. 1958), *cert. denied* 358 U.S. 851, 79 S.Ct. 78, 3 L.Ed.2d 85, reh. den. 358 U.S. 914, 79 S.Ct. 238, 3 L.Ed.2d 235.

During oral argument, the Court, as a third ground for granting the motion, held that the Federal Court lacked jurisdiction over this suit because such jurisdiction was preempted under the National Labor Relations Act. As a general rule, neither state nor Federal courts have jurisdiction over suits directly involving activity which is arguably subject to § 7 or § 8 of the Act. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775, 783 (1959); *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 911, 17 L.Ed.2d 842, 851 (1967). At the hearing, however, there was some dispute over whether the plaintiff was involved in labor activity or was merely present in the store for the purpose for which the store was held open. The Court accepts the plaintiff's allegation that he was involved in no form of union activity, and, therefore, now finds it unnecessary to reach the preemption issue in dismissing the Complaint.

For the reasons stated in open court and in this opinion, the Motion to Dismiss is SUSTAINED and it is ORDERED that this action be, and it hereby is, DISMISSED.