Revised November 15, 2001

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

No. 00-50702

ROBERTO S. VASQUEZ; ET AL,

Plaintiffs,

JESUS DE LA O,

Plaintiff-Appellant

versus

HOUSING AUTHORITY OF THE
CITY OF EL PASO,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas

November 5, 2001

Before POLITZ and BARKSDALE, Circuit Judges, and FALLON,[*] District Judge.

POLITZ, Circuit Judge:

---

[*]Honorable Eldon E. Fallon, United States District Judge for the Eastern District of Louisiana, sitting by designation.

Jesus De La O appeals an adverse summary judgment in his action challenging the El Paso Housing Authority's enforcement of a trespassing regulation against candidates engaged in door-to-door campaigning. Concluding that the restriction, as applied to nonresident political volunteers, violates the first amendment, we reverse and remand.

## BACKGROUND

De La O resides in the Sun Plaza Apartments, a housing unit owned by the Housing Authority of the City of El Paso ("HACEP"). Roberto Vasquez, a candidate for El Paso County Democratic Chair, sought to distribute literature and to engage in door-to-door campaigning at Sherman Oaks, another HACEP development. Vasquez does not reside in any HACEP facility. HACEP informed Vasquez that he could not campaign on any housing authority property, citing two regulations. The first regulation, commonly known as a "trespass after warning" rule, limits access to HACEP property to "residents, members of their households, their guests and visitors, and such other persons who have legitimate business on the premises, e.g., law enforcement and other governmental personnel, utility service workers, HACEP

2

contractors, and others as authorized by HACEP."[1]  Persons refusing to identify themselves or those who cannot prove authority to be on the development premises are to receive a "trespass warning" ordering them to leave or face arrest.

The second regulation, entitled "Notices and Flyers," prohibits the distribution of such materials without prior approval of the Development's Housing Manager.  It allows residents to distribute literature only between 9:00 a.m. and 8 p.m. and forbids the placing of leaflets on the doors of residents who do not answer.[2]  Taken together, these regulations operate to allow residents to distribute literature, political or otherwise, but prevent nonresidents from doing so.  The Director of Housing Management stated in his affidavit that the trespass after warning rule protects tenants in that most persons arrested on the premises are nonresidents.

The De La O and Vasquez action challenges the regulations restricting nonresident access.  The trial court issued a Temporary Restraining Order enjoining HACEP from preventing Vasquez and other candidates from campaigning on HACEP's property until a final hearing could be held.  That hearing followed and the parties filed dispositive motions.  HACEP moved to dismiss the action and, alternatively, for

---

[1]  Housing Authority of the City of El Paso, Community and Resident Rules for Public Housing and Section 8 New Construction Program, Rule D2.

[2]  Id., Rule D5.

3

summary judgment. De La O and Vasquez responded by filing their own motions for summary judgment. The trial court entered final judgment granting HACEP's motion for summary judgment. In its Memorandum Opinion and Order the court found that the housing development was a non-public forum and that the regulations were a reasonable response to relevant safety concerns. De La O appealed, asserting his constitutional right to receive oral and written presentations from political candidates or their representatives.

## ANALYSIS

We review a summary judgment *de novo*, affirming if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[3] The parties do not dispute the facts and ask us to decide the purely legal issue whether the HACEP regulations violate the first amendment. We conclude that the regulations, as applied to political campaigners and their representatives, constitute an unreasonable restriction on De La O's first amendment right to receive political information.

### I.     Right to Receive Information Protected Under First Amendment

We will address the question of the propriety of a challenged regulation, such as that at bar, if the activity at issue implicates the first amendment. HACEP contends that the present dispute raises no first amendment concerns because De La O, the only

---

[3] Harris v. Rhodes, 94 F.3d 196 (5th Cir. 1996).

remaining appellant, resides in the development and may proceed door-to-door espousing his political views. We are not persuaded; there is more to the inquiry. The first amendment guarantees the unrestricted flow of information into the market place of ideas. This first amendment protection extends not only to those who contribute to the market place of ideas, but necessarily extends to those who seek to benefit from the resultant dialogue. As stated by the Supreme Court:

> The authors of the First Amendment knew that novel and unconventional ideas might disturb the complacent, but they chose to encourage a freedom which they believed essential if vigorous enlightenment was ever to triumph over slothful ignorance. This freedom embraces the right to distribute literature, and necessarily protects the right to receive it.[4]

## II. Forum Analysis

After finding that the activity at issue implicates the first amendment, "we must determine the level of scrutiny that applies to the regulation of protected speech at issue."[5] The Supreme Court recognizes three different categories of government owned property for purposes of the first amendment: the traditional public forum, the designated public forum, and the nonpublic forum.[6] Traditional public fora include

---

[4] Martin v. City of Struthers, 319 U.S. 141, 143 (1943) (citations omitted).

[5] United States v. Kokinda, 497 U.S. 720, 725 (1990) (plurality opinion).

[6] Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 (1983).

"those places which 'by long tradition or by government fiat have been devoted to assembly and debate,'" such as public streets and parks.[7] Designated public fora encompass those places or channels of communication assigned by the government "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."[8] Finally, nonpublic fora consist of those places "which [are] not by tradition or designation a forum for public communication."[9]

We agree with the district court that the HACEP developments fall within the category of nonpublic fora.[10] Residency is limited to those who meet the financial qualifications and the developments lack public streets and parks. In addition, although the residents use the housing complex for myriad everyday life activities, including the discourse on ideas and the discussion of any topic they desire, the government did not create HACEP nor its developments for the purpose of providing a meeting place for the public to exchange ideas. Rather, the purpose of the HACEP development activity is to provide affordable housing to low income citizens who reside in El Paso. This

---

[7] Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 802 (1985) (quoting Perry, 460 U.S. at 45)).

[8] Id. (citing Perry, 460 U.S. at 45-46 and n.7).

[9] Perry, 460 U.S. at 46.

[10] See also Daniel v. City of Tampa, 38 F.3d 546 (11th Cir. 1994) (finding that Florida's housing complexes are nonpublic fora).

necessarily mandates a finding that the HACEP developments differ in character from the areas previously categorized by the Court as designated public fora.[11]

We recognize that HACEP shares many similarities with the government town at issue in <u>Tucker v. State of Texas</u>,[12] where the Court held that a village owned by the United States and designed to provide housing for persons engaged in National Defense activities could not ban religious activities within its boundaries. Unlike Tucker, however, HACEP operates only a small web of housing complexes within a large urban area, it does not control every building and walkway in the city of El Paso. A more telling comparison is the military base at issue in <u>Greer v. Spock</u>.[13] The base permitted free civilian access to certain unrestricted areas, however, "[t]he presence of sidewalks and streets within the base did not require a finding that it was a public forum."[14] Characterizing HACEP as a public forum simply because of its streets and sidewalks, as appellant urges, would be inconsistent with our understanding of the Court's forum

---

[11]  <u>See</u>, <u>e.g.</u>, <u>Widmar v. Vincent</u>, 454 U.S. 263 (1981) (finding university facilities a designated public forum with first amendment rights of equal access to students); <u>City of Madison Joint Sch. Dist. No. 8 v. Wis. Employment Relations Comm'n</u>, 429 U.S. 167 (1976) (finding school board meeting a designated public forum with respect to issues relating to operation of district's public schools).

[12]  326 U.S. 517 (1946).

[13]  424 U.S. 828 (1976).

[14]  <u>United States v. Kokinda</u>, 497 U.S. 720, 727 (1990) (citing <u>Greer v. Spock</u>, 424 U.S. 828, 835-37 (1976)).

analysis jurisprudence. As the Court clearly has noted: "The mere physical characteristics of the property cannot dictate forum analysis."[15] The developments operated by HACEP, as we view them, fall within the category of nonpublic fora.

## III. Constitutionality of the Housing Authority Regulations

The determination that the HACEP developments are nonpublic fora does not end our inquiry. We must evaluate the regulations at issue under the standard established by the Court for restrictions on speech in nonpublic fora. The government may regulate expressive activities in a nonpublic forum "as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."[16] We recognize that the "First Amendment does not guarantee access to property simply because it is owned or controlled by the government."[17] An equally commanding principle, however, is that "[t]he Government, even when acting in its proprietary capacity, does not enjoy absolute freedom from First Amendment constraints."[18] Applying the aforementioned standard to the present dispute, we conclude that the trespass after warning statute, as applied to political

[15] Id.

[16] Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 46 (1983).

[17] United States Postal Serv. v. Greenburgh Civic Ass'ns, 453 U.S. 114, 129 (1981).

[18] Kokinda, 497 U.S. at 725.

8

candidates, constitutes an unreasonable restriction on the residents' first amendment rights.

A.    Viewpoint Neutrality

We agree with the district court that Rules D2 and D5 are viewpoint neutral because they apply to all nonresidents who seek to go door-to-door distributing literature. HACEP proscribes door-to-door campaigning regardless of party affiliation or the viewpoint espoused by the nonresident. Accordingly, the regulations are content-neutral in our constitutional evaluation.

B.    Reasonableness

With due pause and after careful consideration we disagree with trial court that Rules D2 and D5 constitute reasonable regulations when applied to political candidates and their campaign volunteers. The trespass regulation, as applied to political campaigning, strikes at the very core of our democratic system. "Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions."[19] For many individuals, door-to-door political volunteers provide the main or only link to the election process, especially with respect to local elections where

---

[19]  Schneider v. State (City of Irvington), 308 U.S. 147, 161 (1943).

9

candidates may lack the resources for extensive media campaigns. In recognizing the importance of political canvassing, the Supreme Court stated: "Of course, as every person acquainted with political life knows, door to door campaigning is one of the most accepted techniques of seeking popular support, while the circulation of nominating papers would be greatly handicapped if they could not be taken to the citizens in their homes. Door to door distribution of circulars is essential to the poorly financed causes of little people."[20] We do not reject HACEP's concern that non-residents commit the majority of crimes on development property, nor its belief that combating crime is a legitimate purpose for the trespass after warning regulation. We conclude, however, that the manner in which HACEP seeks to accomplish its goal of crime prevention is unreasonable under the circumstances herein presented.

As noted by the Court, "consideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved."[21] HACEP operates housing developments, where people walk to and from their residences, talk with their neighbors, and generally conduct themselves like individuals in any other neighborhood in El Paso. As such, the citizens

---

[20] Martin v. City of Struthers, 319 U.S. 141, 146 (citations omitted).

[21] Heffron v. Int'l Soc'y for Krishna Consciousness, 452 U.S. 640, 650-51 (1981).

who reside in the HACEP developments deserve access to political information in the same manner as other citizens of El Paso. HACEP apparently acknowledges the importance of allowing political discourse because it concedes that De La O, a resident, can walk door-to-door expressing his views and distributing literature in support of any candidate. The sole qualification, compliance with the strictures in Rule D5,[22] poses a requirement that, if placed upon nonresident political candidates or volunteers, likely would remedy any safety concerns caused by unknown individuals campaigning at inappropriate hours.

We note with some focus that the record reflects that HACEP does not ban all nonresidents, as the trespass regulation does not apply to certain individuals. These include members' guests and visitors, and "such other persons who have legitimate business on the premises, e.g., law enforcement and other government personnel, utility service workers, HACEP contractors, and others as authorized by HACEP." That the regulation lists certain groups as "examples" indicates to us that HACEP contemplates the existence of other groups, unmentioned in the regulation, who fall under the category of individuals with "legitimate business on the premises." We are persuaded beyond peradventure that the wholesale exclusion of political candidates and their

[22] Specifically, getting prior permission to distribute any notices or flyers from the Housing Manager at Sun Plaza and going door-to-door between the hours of 9 a.m. and 8 p.m.

volunteers from this category unreasonably and unnecessarily interferes with what may well be the primary connection between many of HACEP's residents and the democratic process.[23]

Finally, "[i]n considering legislation which thus limits the dissemination of knowledge, we must 'be astute to examine the effect of the challenged legislation'. . .."[24] The effect of the trespass regulation, as applied in the matter before us, is to isolate a significant portion of the El Paso community from one of the most time-honored and effective means of political discourse. Although HACEP's outright ban on door-to-door campaigning by nonresidents is unreasonable, requiring political campaigners to seek the same authorization as other individuals that have "legitimate business on the premises" would be reasonable in light of HACEP's goals of preventing crime by nonresidents. HACEP's Housing Managers need merely check to ensure that

---

[23] We note that HACEP uses a system, the specifics of which are not contained in the record, by which law enforcement officers make the determination of who to "warn" after asking for identification. The government personnel, utility service workers, etc., who qualify as having "legitimate business on the premises" must carry some type of identification to satisfy the officers that their presence on HACEP property is warranted. We can think of no reasonable explanation for barring political candidates from obtaining similar identification. If the checking of an individual's credentials by law enforcement officials serves as sufficient protection when allowing government personnel, contractors and others on to the premises, the same safeguards should provide ample security when dealing with political candidates and their representatives.

[24] Martin, 319 U.S. at 144 (quoting Schneider, 308 U.S. at 161 (1939)).

the campaign volunteer's credentials are valid. Such identification might properly be denied if the volunteer reasonably lacked sufficient credentials. This would provide an adequate balance between protecting residents from dangerous imposters and promoting political discourse: "While door to door distributors of literature may be either a nuisance or a blind for criminal activities, they may also be useful members of society engaged in the dissemination of ideas in accordance with the best tradition of free discussion."[25]

We recognize that in Daniel v. City of Tampa, the Eleventh Circuit reached an opposite conclusion with respect to a nearly identical statute, Florida Statute Chapter 810.09.[26] Our brethren concluded that Florida's housing authority complexes are nonpublic fora and that "enforcement of the statute is a reasonable means of combating the rampant drug and crime problems within the Housing Authority property."[27] While not unmindful of the conflict created by our differing interpretation of the first amendment issues implicated herein, the nature of the injustice inflicted by enforcement of the regulation in this case warrants reversal of the summary judgment before us.

---

[25] Id. at 145 (discussing crime prevention in context of citywide regulation prohibiting door-to-door leafleting).

[26] 38 F.3d 546 (11th Cir. 1994).

[27] Id. at 550.

While not a public forum, Sun Plaza houses citizens of El Paso who deserve access to political information and an unfettered role in the democratic process. The values at stake are a precious cornerstone in our nation's political foundation.

> "This court has characterized the freedom of speech and that of the press as fundamental personal rights and liberties. The phrase is not an empty one and was not lightly used. It reflects the belief of the framers of the Constitution that exercise of the rights lies at the foundation of free government by free men. It stresses, as do many opinions of this court, the importance of preventing the restriction of enjoyment of these liberties."[28]

## IV. Conclusion

The nature of HACEP's developments make an outright ban on door-to-door political campaigning by nonresidents an unreasonable restriction on the freedoms guaranteed by the first amendment. For the reasons assigned, we REVERSE and REMAND for further proceedings not inconsistent herewith.

---

[28] Schneider v. State (City of Irvington), 308 U.S. 147, 161 (1939).

14

RHESA HAWKINS BARKSDALE, Circuit Judge, dissenting:

I agree with the majority that resident Jesus De La O has standing to challenge the regulations at issue and that Sun Plaza Apartments, owned by the Housing Authority of the City of El Paso (HACEP), is not a public forum. However, I must dissent from the majority's holding that those regulations are not reasonable in the light of the purpose of the HACEP properties – providing affordable housing to its low income, primarily elderly residents.

## I.

Jesus De La O, a Sun Plaza Apartments resident, challenges two regulations — Rules D2 and D5 — promulgated by HACEP: "Trespass After Warning" (Rule D2) and "Notices and Flyers" (Rule D5). The "Trespass After Warning" regulation limits access to HACEP property to lawful residents, invited guests, and other persons with legitimate business on the property, such as law enforcement and government personnel, utility workers, HACEP contractors, and individuals authorized by HACEP. Housing Authority of the City of El Paso, Tex., Community and Residential Rules for Public Housing and Section 8 New Construction Program, Rule D2 (19 Aug. 1998). Persons who refuse to identify themselves, or who cannot prove authorization to be on the premises, receive a "trespass warning", requiring them to leave the property or be

arrested.  *Id.*

The "Notices and Flyers" regulation limits distribution of literature by residents of HACEP properties to specified hours and prohibits leaving flyers "in plain view on a resident's door" when a resident does not answer.  *Id.*, Rule D5 (as amended 1 Feb. 2000).

The HACEP Director of Housing Management stated that the purpose of Rules D2 and D5 is the protection and safety of tenants, because:  most arrests on HACEP properties involve nonresidents; nonresidents sell drugs on HACEP property; and large numbers of undocumented aliens pass through HACEP property.  At Sun Plaza Apartments in particular, nonresident walk-through is especially high, and the Immigration and Naturalization Service operates a surveillance station there to combat illegal immigration.  Also, because Sun Plaza Apartments is primarily inhabited by elderly residents, many in the complex are fearful of door-to-door solicitation. Furthermore, the Director explained to staff and De La O that leaving a flyer at an unanswered door would advertise to thieves that no one is at, or in, that apartment.

II.

As the majority notes, when First Amendment claims are implicated, there are three types of government-owned property under the Supreme Court's "forum analysis":  the traditional public forum, the designated forum, and the nonpublic forum.

16

*See United States v. Kokinda*, 497 U.S. 720, 726-27 (1990). And, as the majority holds, Sun Plaza Apartments and other HACEP properties can be nothing other than nonpublic fora. *Maj. Op.* at 6. Consequently, "the state may reserve the forum for its intended purposes ... as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view". *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983); *see also Cornelius v. NAACP Defense & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985); *Hobbs v. Hawkins*, 968 F.2d 471, 481 (5th Cir. 1992).

As the majority holds, Rules D2 and D5 are viewpoint neutral as written and as applied. *Maj. Op.* at 9. Considering the uncontradicted evidence concerning HACEP's purpose for its properties, I would hold, however, that the regulations are "reasonable in light of the purpose served by the forum". *Hobbs*, 968 F.2d at 481.

While the majority acknowledges the nonpublic forum reasonableness test, it ignores the Supreme Court's explanation of how to evaluate the reasonableness of a regulation. "The Government's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the *most reasonable* or the *only reasonable limitation.*" *Cornelius*, 473 U.S. at 808 (emphasis in original and emphasis added). The majority incorrectly concludes that the regulations are not reasonable because there

17

are other approaches that HACEP could have taken.[29]

In contrast to the majority's method of finding another approach that it deems reasonable, we should accept the uncontested explanation of the HACEP Director of Housing Management that the "Trespass After Warning" regulation (Rule D2) is a reasonable response to the problem of rampant crime in low-income housing developments. *See Daniel v. City of Tampa, Florida*, 38 F.3d 546, 550 (11th Cir. 1994); *see* also *Williams v. Nagel*, 643 N.E.2d 816, 817-18 (Ill. 1994), *cert. denied*, 514 U.S. 1064 (1995) (police-issued "barred notice" authorized complexes to compile "no trespass" lists); *People v. Kojac*, 671 N.Y.S.2d 949, 950 (N.Y. Sup. Ct. 1998) (building management authorized police to arrest those on the premises without legitimate business); *State v. Newell*, 639 N.E.2d 513, 514 (Ohio Ct. App. 1994) (off-duty police officers authorized to issue trespass warnings for public housing); *City of Dayton v. Williams*, 1994 WL 37263 (Ohio Ct. App. 1994) (public housing authority policy allowed police to issue trespass notices and arrest those who previously received

---

[29]The majority suggests that political canvassers could obtain identification. Apart from ignoring that most of the individuals with "legitimate business on the premises" have a specific job that does not involve walking from door-to-door throughout a HACEP complex, the majority also does not address the myriad problems that would arise from this approach. For example, are there limits on the number of ID badges provided? How should HACEP determine who is a legitimate candidate? Would this authorization extend to political organizations and interest groups?

18

warnings). Rule D2 allows residents to have guests and visitors on the premises; therefore, De La O may invite political campaigners to his apartment without restriction. The regulation merely provides HACEP with a way to deal with *unauthorized* individuals on the premises.

In fact, the majority ignores its own forum analysis. In deciding the HACEP properties are nonpublic, the majority correctly concludes that the *purpose* of the properties is *not* to provide a meeting place for the exchange of ideas but rather to provide affordable housing. *Maj. Op.* at 6. Once the majority reaches the reasonableness inquiry, however, it focuses on the importance of communication and access to information, which ignores that the reasonableness of the regulation should be judged by reference to the purpose of the forum.

Furthermore, while no one would disagree with the majority's most commendable interest in promoting the democratic process, another factor that is integral to the evaluation of the reasonableness of a regulation is whether alternative channels of communication exist. *Cornelius*, 473 U.S. at 809 (direct mail and in-person solicitation outside the forum as alternatives); *Perry Educ. Ass'n*, 460 U.S. at 53 (bulletin boards, meeting facilities, and United States mail available). The HACEP Director of Public Housing's uncontradicted affidavit explained that all HACEP properties are adjacent to public streets and sidewalks, and that De La O's complex, Sun Plaza Apartments, "is

19

completely bounded by city streets and sidewalks" open to the public. De La O and others are free to hear the messages of various political candidates outside their complex and decide whether to invite them inside the development in compliance with HACEP's safety regulation. Also (and obviously), there is no regulation preventing a direct mail campaign to HACEP residents.

Without addressing the readily available alternative channels of communication,[30] the majority chooses to focus on the utility of political canvassing in local elections, ignoring further guidance by the Supreme Court: "The First Amendment does not demand unrestricted access to a nonpublic forum merely because use of that forum may be the most efficient means of delivering the speaker's message". *Cornelius*, 473 U.S. 809; *United States Postal Serv. v. Council of Greenburgh Civic Ass'ns,* 453 U.S. 114, 129 (1981). While door-to-door canvassing may be a more efficient means for candidates to communicate their political views, the regulations, of course, do not prevent them from speaking to residents outside the HACEP properties on the public streets and sidewalks.

The majority also mistakenly focuses on the distinction between those allowed

---

[30]Instead, the majority quotes from *Martin v. City of Struthers, Ohio*, 319 U.S. 141 (1943), a case decided prior to the Supreme Court's "forum analysis" approach and holding unconstitutional a city-wide ban on door-to-door solicitation at residential homes.

20

on the premises and those not.  However, the Supreme Court has spoken to this point as well:

> Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity.  These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property.

*Perry Educ. Ass'n*, 460 U.S. at 49.  Consequently, it is entirely appropriate for HACEP to make distinctions based on the identity of the speaker:  residents, invited guests, and those with official business are allowed to remain, while others, such as political canvassers, uninvited solicitors, illegal aliens, and those intent on criminal activity, are required to leave.

### III.

In contrast to the majority, I believe that the approach by the Eleventh Circuit seven years ago in addressing  a nearly identical statute is correct.  *See Daniel*, 38 F.3d at  550-51.  As in *Daniel*, I would affirm the summary judgment.  The two Rules at issue are reasonable because the purpose of the HACEP properties is to provide affordable housing and not a vehicle for political canvassing.  Accordingly, I respectfully dissent.

21