# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3107

_____

Phillip Eugene Parmley,     *

            *

    Plaintiff - Appellant,  *

            * Appeal from the United States

   v.          * District Court for the

            * Western District of Arkansas.

Larry Norris, Director, Arkansas  *

Department of Corrections,   *

agent of Arkansas Department  *

of Corrections,       *

            *

    Defendant - Appellee.  *

_____

Submitted: September 24, 2009
Filed: November 16, 2009

_____

Before MELLOY, GRUENDER, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Philip Eugene Parmley, an Arkansas inmate convicted of possession of methamphetamine, appeals the district court's[1] order dismissing his petition for habeas corpus relief as untimely. This case presents the issue of which appellate court in Arkansas is the "state court of last resort." That determination controls when the

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

statute of limitations commenced for Parmley's habeas petition. We hold that the Arkansas Court of Appeals is not a "state court of last resort," and therefore the statute of limitations began running immediately after the Arkansas Court of Appeals denied Parmley's motion for a rehearing. Accordingly, we affirm the district court's judgment.

## I. Background

Parmley was convicted of possession of methamphetamine in the Circuit Court of Garland County, Arkansas. He was sentenced to thirty years in prison on September 25, 2002. The Arkansas Court of Appeals affirmed Parmley's conviction. Parmley v. Arkansas, No. CR03-71, 2004 WL 61045, at *7 (Ark. Ct. App. Jan. 14, 2004). Thereafter, Parmley filed two pro se motions. First, he filed a petition for rehearing, which Arkansas Court of Appeals denied on May 19, 2004. Second, Parmley submitted a belated petition for review to the Arkansas Supreme Court. The clerk declined to file his petition because it was untimely. On May 20, 2004, the Arkansas Supreme Court denied Parmley's request to direct the clerk to file his belated motion for review. Parmley v. Arkansas, No. CR04-462, 2004 WL 1119923, at *1 (Ark. May 20, 2004). Parmley did not seek any further review of his direct appeal by the Arkansas Supreme Court or the U.S. Supreme Court. On July 9, 2004, Parmley petitioned for post-conviction relief in Arkansas state court pursuant to Arkansas Rule of Criminal Procedure 37.1. The Arkansas trial court denied Parmley relief under Rule 37.1. The Arkansas Supreme Court affirmed, Parmley v. Arkansas, No. CR05-141, 2006 WL 3239992 (Ark. Oct. 5, 2006) (per curiam), and issued a mandate denying post-conviction relief on October 24, 2006.

On September 29, 2007, nearly 340 days after the Arkansas Supreme Court denied post-conviction relief, Parmley filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in federal district court. Parmley's habeas petition alleged ineffective assistance of counsel in violation of the Sixth and Fourteenth

Amendments. A magistrate judge[2] issued a report and recommendation, concluding that Parmley's conviction became final on May 19, 2004 when the Arkansas Court of Appeals denied Parmley's motion for rehearing on his direct appeal. Consequently, the limitations period was running for the time period immediately after the Arkansas Court of Appeals denied Parmley's appeal. When combined with the later gap of nearly 340 days, Parmley filed his petition beyond the 1-year statute of limitations for habeas corpus petitions. The district court adopted the magistrate's report and recommendation in its entirety, dismissing Parmley's habeas petition with prejudice because it was untimely. Parmley v. Norris, No. 6:07-cv-6082, 2008 WL 2561964, at *1.

On July 14, 2008, Parmley requested a certificate of appealability from the district court. The district court denied the certificate of appealability on September 5, 2008. Parmley timely appealed to this Court. On April 2, 2009, we granted Parmley's application for certificate of appealability to review the dismissal of Parmley's habeas petition.

Parmley presents two potential grounds for reversal. First, Parmley argues that his habeas petition was timely because the statute of limitations was tolled for 90 days following the Arkansas Court of Appeals' denial of his motion for rehearing. Ninety days represents the time allotted for Parmley to file a petition for writ of certiorari to the U.S. Supreme Court. See Sup. Ct. R. 13.1. Second, Parmley argues that the district court should have stayed his habeas petition pursuant to Rhines v. Weber, 544 U.S. 269, 275 (2005). This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). We review for the district court's interpretation of law de novo. Walker v. Norris, 436 F.3d 1026, 1029 (8th Cir. 2006).

---

[2]The Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas.

## II. Statute of Limitations

We must consider three time periods following the denial of Parmley's motion for rehearing by the Arkansas Court of Appeals: (1) the 50 day period immediately after May 19, 2004, and before Parmley filed a state post-conviction relief petition; (2) the time period that Parmley's state post-conviction relief petition was pending; and (3) the nearly 340-day period between the conclusion of state post-conviction relief proceedings and the commencement of this action. It is undisputed that the statute of limitations was tolled for the second period, see 28 U.S.C. § 2244(d)(2), and running for the third period. The parties disagree, however, on the first period. The district court held that the statute of limitations was running during that 50 day period, and therefore Parmley's habeas petition was untimely. Parmley argues that the statute of limitations did not begin running until after that 50 day period. It is undisputed that if Parmley is correct, his petition was timely. Thus, we must determine when the statute of limitation began running.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a 1-year statute of limitations governs a state prisoner's petition for federal habeas corpus relief. 28 U.S.C. § 2244(d)(1). The relevant triggering date for the statute of limitations is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A). This provision permits prisoners time to seek direct review in the U.S. Supreme Court. Smith v. Bowersox, 159 F.3d 345, 347–48 (8th Cir. 1998). If a prisoner files a petition for certiorari, then his conviction becomes final upon "the completion or denial of certiorari proceedings before the United States Supreme Court." Id. at 348. If a prisoner does not petition the U.S. Supreme Court for review, then his conviction becomes final when the time for filing that petition expires, so long as the Supreme Court could have reviewed his direct appeal. Riddle v. Kemna, 523 F.3d 850, 855 (8th Cir. 2008). The time for filing a writ of certiorari in the U.S. Supreme Court is 90 days. Sup. Ct. R. 13.1. Therefore, the statute of limitations on

-4-

a habeas petition begins running 90 days after a prisoner reaches the end of "all direct criminal appeals in the state system." Bowersox, 159 F.3d at 348. If, however, the Supreme Court lacked jurisdiction to review the direct appeal, then the statute of limitations begins to run immediately following the conclusion of the prisoner's direct appeal. Riddle, 523 F.3d at 855.

Parmley did not petition the U.S. Supreme Court for review, but he nonetheless argues that "the expiration of time for seeking [direct] review" of his conviction includes the 90-day period for seeking Supreme Court review. In Riddle v. Kemna, we held that the 90-day toll on the statute of limitations did not apply after a judgment by the Missouri Court of Appeals because U.S. Supreme Court review was unavailable. Id. at 854–55. Supreme Court review is limited to judgments of a "state court of last resort" or a lower state court if the "state court of last resort" has denied discretionary review. See Sup. Ct. R. 13.1; see also 28 U.S.C. § 1257(a). Because the Missouri Court of Appeals was not the "state court of last resort," the 90-day toll was unavailable for the petitioner in Riddle. 523 F.3d at 855.

At first glance, this case appears to be the Arkansas version of Riddle. In both cases, the habeas petitioner appealed his conviction to the intermediate state court but did not timely petition the state supreme court for review.[3] Further, the central issue in both cases is whether the intermediate state court is a "state court of last resort," and therefore whether "the expiration of time for seeking [direct] review" includes a 90-day period for seeking certiorari review after the intermediate state court's decision.

_____

[3]Although Parmley belatedly sought review from the Arkansas Supreme Court, his appeal was never filed by the clerk's office because it was untimely. Moreover, the Arkansas Supreme Court denied Parmley's motion to direct the clerk to file the appeal. Parmley does not contend that the U.S. Supreme Court could have reviewed that decision from the Arkansas Supreme Court.

"Identifying the state court of last resort requires an examination of the particular state court procedures." Riddle, 523 F.3d at 853. The Arkansas Constitution vests the Arkansas Supreme Court—not the Court of Appeals—with broad jurisdiction, general authority, and rule-making powers. See Ark. Const. amend. 80, § 2(D)(1) (2001) (granting the Arkansas Supreme Court "statewide appellate jurisdiction"); Id. § 4 ("The Supreme Court shall exercise general superintending control over all courts of the state . . . ."); Id. § 3 ("The Supreme Court shall prescribe the rules of pleading, practice and procedure for all courts . . . ."). Most importantly, the Arkansas Constitution establishes a hierarchy within the Arkansas judiciary: "There shall be a Court of Appeals which may have divisions thereof as established by Supreme Court rule. The Court of Appeals shall have such appellate jurisdiction as the Supreme Court shall by rule determine and shall be subject to the general superintending control of the Supreme Court." Id. § 5. Pursuant to the state constitution, the Arkansas Supreme Court has adopted several rules regarding the jurisdiction of the Court of Appeals and how cases can be transferred to the Supreme Court. See, e.g., Ark. Sup. Ct. R. 1-2 ("Appellate jurisdiction of the Supreme Court and Court of Appeals"); Ark. Sup. Ct. R. 2-3 (establishing the requirements for parties to petition the Court of Appeals for rehearing); Ark. Sup. Ct. R. 2-4 (establishing the rules for petitions for review by the Supreme Court). As such, the Arkansas Supreme Court Rules determine the Court of Appeals' jurisdiction and caseload, whereas the Arkansas Constitution establishes the Supreme Court's jurisdiction and authority to establish rules governing which cases it will review. These authorities persuade us that the Arkansas Supreme Court—not the Court of Appeals—is the "court of last resort" in Arkansas.

Parmley contends that the Arkansas Court of Appeals was the "state court of last resort" because it is the only court that could have reviewed his direct appeal. Parmley argues that he was forbidden from petitioning the Arkansas Supreme Court for review of his direct appeal. It is undisputed that Parmley was required to appeal his conviction first to the Arkansas Court of Appeals. See Ark. Sup. Ct. R. 1-2(a)(2)

(requiring criminal appeals to be filed in the Arkansas Court of Appeals unless the death penalty or life imprisonment has been imposed). Thereafter, petitions to the Arkansas Supreme Court for review must allege either:

> (i) the case was decided in the Court of Appeals by a tie vote, (ii) the Court of Appeals rendered a decision which is in conflict with a prior holding of a published opinion of either the Supreme Court or the Court of Appeals, or (iii) the Court of Appeals otherwise erred with respect to one of the grounds listed in Rule 1-2(b).

Ark. Sup. Ct. R. 2-4(c). Rule 1-2(b) lists six grounds that the Supreme Court will consider in determining reassignment of cases:

> (1) issues of first impression, (2) issues upon which there is a perceived inconsistency in the decisions of the Court of Appeals or Supreme Court, (3) issues involving federal constitutional interpretation, (4) issues of substantial public interest, (5) significant issues needing clarification or development of the law, or overruling of precedent, and (6) appeals involving substantial questions of law concerning the validity, construction, or interpretation of an act of the General Assembly, ordinance of a municipality or county, or a rule or regulation of any court, administrative agency, or regulatory body.

Ark. Sup. Ct. R. 1-2(b). Parmley insists that he could not have petitioned the Arkansas Supreme Court for review under any of the grounds listed in Rules 2-4(c) and 1-2(b). This fact, argues Parmley, means that the Arkansas Court of Appeals was the "state court of last resort" at least as to his case. That inference is where we disagree.

Arkansas Supreme Court Rule 1-2 makes clear that the Supreme Court's authority to review a case is not dependent upon or limited by the enumerated grounds for assigning cases. Rule 1-2(b) provides, "*Any case* is subject to reassignment by the Supreme Court, and in doing so, the Supreme Court *will consider but not be limited to* [the list of grounds for reassignment]." Ark. Sup. Ct. R. 1-2(b) (emphasis added).

-7-

Moreover, Rule 1-2(e), which clarifies the Arkansas Supreme Court's discretionary considerations in determining whether to grant a petition for review, states that the factors from Rules 1-2(b) and 2-4(c) "neither [control] nor fully [measure] the Supreme Court's discretion." Ark. Sup. Ct. R. 1-2(e). Lastly, Rule 1-2(g) allows the Supreme Court to assign or transfer cases "to achieve a fair allocation of the appellate workload," which is a consideration that is completely absent from Rules 1-2(b) and 2-4(c). The Arkansas Supreme Court rules expressly indicate that the grounds for review listed in Rules 1-2(b) and 2-4(c) are not exhaustive. Notably, the Arkansas Supreme Court and one federal district court concur with this interpretation of the Arkansas Supreme Court Rules. See Maxey v. Tyson Foods, Inc., 18 S.W.3d 328, 329 (Ark. 2000) ("[T]he factors we consider in determining whether to grant a petition to review neither control nor fully measure our discretion"); Ben-Yah v. Norris, 570 F. Supp. 2d 1086, 1093–94 (E.D. Ark. 2008) ("Ark. R. Sup. Ct. 1-2(b) makes it clear that the Arkansas Supreme Court's discretion for review is not limited to the express factors."). Even though Parmley claims that his direct appeal could not fit within the broad categories in Rules 1-2(b) and 2-4(c), the Arkansas Supreme Court retained discretion to review Parmley's direct appeal. Consequently, the Arkansas Court of Appeals was not the "state court of last resort."

Parmley also cites Arkansas Supreme Court Rule 1-2(h) in support of the argument that his conviction was final after the Court of Appeals denied his motion for rehearing. The Arkansas Supreme Court adopted Rule 1-2(h) in response to language in O'Sullivan v. Boerckel, 526 U.S. 838 (1999). It clarifies that convicted criminals shall not be required to petition the Arkansas Supreme Court for review in order to exhaust "all available state remedies." Ark. Sup. Ct. R. 1-2(h). In Riddle, we held that a similar rule from the Missouri Supreme Court was inapposite because it did not and could not control review by the U.S. Supreme Court. 523 F.3d at 854; see also Pugh v. Smith, 465 F.3d 1295, 1300 (11th Cir. 2006) (rejecting a like argument based on Georgia's exhaustion of remedies rule). Indeed, Rule 1-2(h) neither controls

the jurisdiction of the Arkansas Supreme Court, nor does it allow the U.S. Supreme Court to grant certiorari review to a judgment from the Arkansas Court of Appeals.

Admittedly, this case is more difficult than Riddle due to dicta from two Arkansas Supreme Court cases decided shortly after the Arkansas General Assembly created the Arkansas Court of Appeals. In Moose v. Gregory, 590 S.W.2d 662 (Ark. 1979), the Supreme Court denied a petition to review a Court of Appeals judgment and took the opportunity to declare its aspirations for the Arkansas appellate structure:

> Ideally, the Supreme Court and the Court of Appeals will each have its own field of primary jurisdiction. Ideally, each court will in effect be a court of last resort, with its decisions having a desirable finality. Ideally, it will be immaterial to the litigant whether his particular case goes to one court or to the other.

Id. at 664. Two years later, in Daniels v. Bennett, 613 S.W.2d 591 (Ark. 1981), the Arkansas Supreme Court explained that it does "not regard the Court of Appeals as a purely intermediate court, 'becoming merely an expansive and time-consuming level in the appellate structure.'" Id. at 592 (quoting Moose v. Gregory). However, neither Moose nor Daniels controls the Arkansas Supreme Court's jurisdiction or authority to review a case. If anything, these two opinions show that the Arkansas Supreme Court's has exercised its *discretion* to adopt a limited role in the Arkansas appellate landscape. Parmley's argument fails because what matters is the Arkansas Supreme Court's authority and jurisdiction to review a case—not whether it has exercised discretion to do so. See Gorman v. Wash. Univ., 316 U.S. 98, 101 (1942) (dismissing an appeal for lack of jurisdiction because the appellant did not seek review from "the last state tribunal . . . to which the cause could be brought for review"); Stratton v. Stratton, 239 U.S. 55, 56 (1915) (dismissing an appeal from a state intermediate court where the state supreme court retained discretionary authority to review the case and refusing to "indulg[e] in conjecture" as to how the state supreme court would have exercised discretion had the appellant sought such review).

There is one district court case that cannot be reconciled with this opinion. In Collier v. Norris, 402 F. Supp. 2d 1026 (E.D. Ark. 2005), the district court determined that the Arkansas Court of Appeals was the "state court of last resort" because "there was no good-faith basis for [the prisoner] to petition the Supreme Court of Arkansas for review under that court's Rule 2-4." Id. at 1030. Accordingly, the court held the statute of limitations was tolled for 90 days because the prisoner "could have petitioned the Supreme Court of the United States for writ of certiorari seeking review of his conviction without first petitioning the Supreme Court of Arkansas for review." Id.[4] Collier is directly at odds with our conclusion here. Although the requirement in Rule 2-4 appears strict, we cannot interpret Rule 2-4 to overshadow the plain language in Rule 1-2 that the enumerated discretionary factors are non-exhaustive.

Finally, Parmley argues that Arkansas Supreme Court Rule 2-4(c) creates an "affirmative duty for a party to petition to review to the Arkansas Supreme Court if the Arkansas Court of Appeals erred with respect to one of the grounds enunciated in Ark. R. Sup. Ct. 1-2(b)." Appellant's Reply Br. 1. To the contrary, Rule 2-4 does not impose an "affirmative duty" on prisoners to appeal to the Arkansas Supreme Court in any situation. In the future, when a prisoner lacks a good faith basis for arguing that the Arkansas Supreme Court should review his conviction based on one of the factors listed in Rules 1-2(b) or 2-4(c), as here, then the prisoner should either (1) timely petition the Arkansas Supreme Court for discretionary review based on other factors or (2) file a petition for habeas corpus relief within one year (excluding any tolling for state post-conviction relief proceedings). Parties have no "affirmative duty" to petition the Arkansas Supreme Court for review, regardless of whether they plan to file a petition for habeas corpus relief. We are merely clarifying when the statute of limitations begins running for some prisoners.

---

[4]The district court eventually denied habeas relief, and this Court affirmed without reaching the statute of limitations question. Collier v. Norris, 485 F.3d 415 (8th Cir. 2007).

We conclude that the Arkansas Court of Appeals was not the "state court of last resort," and therefore the U.S. Supreme Court could not have reviewed either the Arkansas Court of Appeals' affirmance of Parmley's conviction or denial of his motion for rehearing. Accordingly, we hold that "the expiration of time for seeking [direct] review" does not include the time period that Parmley could have filed a petition for certiorari. The statute of limitations on Parmley's habeas petition began running on May 20, 2004. Because his petition was filed some 390 days after that date (excluding the time that post-conviction relief proceedings were pending), Parmley's petition for a writ of habeas corpus was correctly dismissed as untimely.

## III. Failure to Stay

As an alternative basis for reversal, Parmley argues that the district court should have stayed his petition pursuant to <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), to allow him to perfect his petition by pursuing his unexhausted claims in Arkansas state court. Because the stay-and-abeyance procedure for mixed habeas petitions is limited to *timely* petitions, <u>see</u> <u>id.</u> at 275, our conclusion that Parmley's petition was untimely renders the stay-and-abeyance issue moot.

\*    \*    \*

The judgment of the district court is affirmed.

GRUENDER, Circuit Judge, dissenting.

I agree with the Court that the timeliness of Parmley's habeas petition hinges on whether the U.S. Supreme Court had jurisdiction to review the Arkansas Court of Appeals' denial of Parmley's petition for rehearing. Answering this question "requires an examination of the particular state court procedures." *Riddle v. Kemna*, 523 F.3d 850, 853 (8th Cir. 2008) (en banc). Here, this examination requires us to interpret arguably conflicting rules of Arkansas procedure. After interpreting these

-11-

rules, we then must apply them to Parmley's case to identify "the highest court . . . in which a decision could be had," 28 U.S.C. § 1257, since the U.S. Supreme Court only has jurisdiction to review a decision from that court. The Court today errs in both its interpretation of Arkansas procedure and its application of § 1257. First, the Court effectively reads Arkansas Supreme Court Rule 2-4(c) to be a nullity, when an alternative reading would continue to give force to that rule. Second, the Court incorrectly focuses on the jurisdiction of the Arkansas Supreme Court, rather than on whether a decision from that court was available to Parmley.

Instead of compelling defendants to file, and the Arkansas Supreme Court to entertain, petitions for review that do not comply with Arkansas's procedural rules, I would continue to apply Arkansas Supreme Court Rule 2-4(c) as written. In my view, the Arkansas Court of Appeals' ruling was the final state court decision available to Parmley, and it therefore triggered the U.S. Supreme Court's certiorari jurisdiction. Thus, the statute of limitations for Parmley's federal habeas petition did not begin to run until the 90-day period for petitioning the U.S. Supreme Court expired. *See Smith v. Bowersox*, 159 F.3d 345, 348 (8th Cir. 1998). Because I would hold that Parmley was entitled to this 90-day period and that consequently his habeas petition was timely filed, I respectfully dissent.

## A.

Two state court procedural rules are the focus of this case. Under Arkansas Supreme Court Rule 1-2(e), the Arkansas Supreme Court has unbounded discretion to grant a petition for review for any reason. However, Rule 2-4(c) provides that petitions for review must allege one of eight grounds for review: a tie vote in the Court of Appeals, a decision that conflicts with an Arkansas Supreme Court decision or another Court of Appeals decision, or one of the six grounds enumerated in Rule 1-2(b).[5] *See ante* at 7 (listing the grounds enumerated in Rule 1-2(b)). In short, Rule

---

[5]There is no dispute that Parmley could not satisfy Rule 2-4(c). The state has never denied Parmley's claim that Rule 2-4(c) barred his petition. Indeed, Parmley's

1-2(e) allows the Arkansas Supreme Court to grant petitions for reasons (hereinafter "discretionary factors") that, on their own, would be insufficient for a defendant to even file a petition under Rule 2-4(c).

The interpretive question before the Court is the proper way to address the gap between the set of petitions which could be *granted* and the smaller set of petitions which could be *filed*. The Court chooses to eliminate this gap, holding that notwithstanding the limitations of Rule 2-4(c), any petition which could be granted can be filed.[6] This overlooks the possibility that the gap was created intentionally; that is, in my view the Arkansas Supreme Court has deliberately restricted its discretion to grant petitions to encompass only the subset of petitions it permits defendants to file. As explained below, I find the Court's reading problematic in two respects. Initially, it ignores Rule 2-4(c)'s clear text, which states that a "petition for review *must* allege one of" the eight enumerated grounds. Ark. Sup. Ct. R. 2-4(c) (emphasis added). Also, the Court's holding runs counter to the Arkansas Supreme Court's actual treatment of petitions for review and its statements concerning the role of the Arkansas Court of Appeals. Reading Rules 1-2(e) and 2-4(c) in the manner I propose avoids these problems.

First, the Court's holding effectively nullifies Rule 2-4(c). The rule states that a petition "must allege" one of eight specifically enumerated grounds. According to the Court, however, a petition to the Arkansas Supreme Court no longer needs to allege one of those eight grounds, but may instead assert any other reason that the

---

only potentially qualifying claim was an ineffective assistance of counsel claim. However, ineffective assistance claims that were not raised in the trial court may only be brought under Arkansas Criminal Procedure Rule 37, not on direct appeal. *Whitney v. State*, 930 S.W.2d 343, 345 (Ark. 1996).

[6]The Court appears to make this choice based solely on the fact that the unusual gap exists. The logical result of the Court's analysis is that no state supreme court with unconstrained discretion could constrain that discretion by adopting a procedural rule such as Rule 2-4(c).

Arkansas Supreme Court might find, in its discretion, to be a persuasive ground for granting the petition. *Ante* at 7-8. This result ignores Rule 2-4(c)'s text and eliminates any force the words "must allege" previously had.

Second, by permitting every defendant to petition the Arkansas Supreme Court for review on any ground, the Court undermines the Arkansas Supreme Court's goal of assigning the Arkansas Court of Appeals "its own field of primary jurisdiction." *Moose v. Gregory*, 590 S.W.2d 662, 664 (Ark. 1979); *see also id.* ("Ideally [the Court of Appeals] will in effect be a court of last resort, with its decisions having a desirable finality."). Under the Court's reading, any Arkansas defendant may petition for review for any reason, making the Arkansas Court of Appeals into "a purely intermediate court, . . . 'merely an expensive and time-consuming level in the appellate structure.'" *Daniels v. Bennett*, 613 S.W.2d 591, 592 (Ark. 1981) (quoting *Moose*, 590 S.W.2d at 663). While the Court suggests that these statements reflect an intent merely to establish a discretionary review system, they are more consistent with an intent of the Arkansas Supreme Court to take a limited role in the appellate process, leaving particular classes of cases and issues to the Arkansas Court of Appeals. In any event, the Court reaches its conclusion without identifying any rulings on petitions for review that did not comply with Rule 2-4(c) where the Arkansas Supreme Court nonetheless considered discretionary factors in granting or denying the petition.[7] *But*

---

[7]Indeed, I could locate no cases where the Arkansas Supreme Court denied a petition for failure to comply with Rule 2-4(c) and at the same time discussed the discretionary factors the Court now holds can also provide grounds for granting a petition. *See, e.g.*, *Munn v. State*, No. CR 05-985, 2005 WL 2462251, at *1 (Ark. Oct. 6, 2005) (unpublished per curiam) ("We find no ground pursuant to Ark. Sup. Ct. R. 2-4(c) to grant the petition for review."); *Kelly v. State*, No. CR 04-1388, 2005 WL 256565 (Ark. Feb. 3, 2005) (unpublished per curiam); *Abshure v. State*, No. CR 02-1213, 2002 WL 31845911 (Ark. Dec. 19, 2002) (unpublished per curiam); *Murphy v. State*, No. CR 99-1388, 1999 WL 1212876 (Ark. Dec. 16, 1999) (unpublished per curiam); *Brown v. State*, No. CR 99-194, 1999 WL 223495 (Ark. Apr. 15, 1999) (unpublished per curiam); *Dodson v. State*, No. CR 99-75, 1999 WL 54932 (Ark. Feb. 4, 1999) (unpublished per curiam).

*see Wilson v. Cain*, 564 F.3d 702, 705 (5th Cir. 2009) (ignoring Louisiana state procedural rule for habeas filings only after finding that "Louisiana courts do not invariably apply [the rule]"); *Emerson v. Johnson*, 243 F.3d 931, 935 (5th Cir. 2001) (same with respect to Texas, "defer[ring] to Texas courts' application of state law").

I read Rule 2-4(c) to bar petitions which cannot allege one of the eight grounds, but once such a ground is found and alleged with respect to at least one issue, the Arkansas Supreme Court may consider other factors in deciding whether to grant review of that issue and others. While Rule 1-2(e) allows the Arkansas Supreme Court potentially to review issues that do not satisfy one of the eight enumerated grounds, under this reading the court will do so only when (1) one of the eight grounds is otherwise present and (2) discretionary considerations support *also* reviewing the issue normally within the "primary jurisdiction" of the Arkansas Court of Appeals, *Moose*, 590 S.W.2d at 664 (discussing such a "primary jurisdiction" for the Court of Appeals). The structure of the Arkansas appellate system, in this respect, would be analogous to a federal court's supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. While a federal court could not hear a state law claim alone under § 1367, it will do so when (1) a federal claim is present and (2) discretionary considerations support also hearing the state law claim. In both instances, an issue within the court's "primary jurisdiction" is the necessary "ticket" into that court. Once there, though, other issues may be considered.

This interpretation of Arkansas's procedural rules continues to give force to Rule 2-4(c)'s "must" language while also giving effect to the statement of unbounded discretion in Rule 1-2(e), thereby avoiding the first problem with the Court's reading. Furthermore, unlike the Court's reading, this interpretation is fully consistent both with the Arkansas Supreme Court's treatment of petitions for review, *see supra* note 7, and with the Arkansas Supreme Court's intent for the Arkansas Court of Appeals to develop "its own field of primary jurisdiction." *Moose*, 590 S.W.2d at 664.

-15-

The Court relies on *Maxey v. Tyson Foods, Inc.*, 18 S.W.3d 328 (Ark. 2000), to support its flawed reading of Arkansas's procedural rules. In fact, the procedural path of *Maxey* is more consistent with the interpretation that I propose. In *Maxey*, the petition for review alleged that the case presented an issue of first impression, one of the six Rule 1-2(b) grounds that permits the filing of a petition for review under Rule 2-4(c). Only after granting review to examine that question did the Arkansas Supreme Court decide also to review certain factual findings, relying on its discretion under Rule 1-2(e). Thus, *Maxey* does not support the Court's conclusion that Rule 2-4(c) is a nullity. *Maxey* merely stands for the proposition that Rule 1-2(e) gives the Arkansas Supreme Court discretion to *review* an issue when a petition could be filed under Rule 2-4(c), not that a losing party can *file* a petition based on any issue. Consistent with *Maxey*, the interpretation I propose shows that Rules 1-2(e) and 2-4(c) are not necessarily irreconcilable and that therefore the Court errs in reading Arkansas Supreme Court Rule 2-4(c) as a nullity.

## B.

In addition to its flawed reading of the Arkansas Supreme Court Rules, the Court's analysis also incorrectly focuses on "the Arkansas Supreme Court's authority and jurisdiction to review a case," *ante* at 9, rather than on whether a "decision could be had" from a "higher court" for the particular defendant in this case, as 28 U.S.C. § 1257 requires.[8] Simply put, we may not be able to identify a single "highest court" for all cases from a particular state, since the review available to a losing party can vary from case to case due to peculiarities in that state's procedural rules.[9] Moreover,

---

[8]There is also reason to doubt the Court's conclusion that Rule 2-4(c) is not jurisdictional, *ante* at 9. *See Casey v. State*, No. CR 07-171, 2009 WL 223888 (Ark. Jan. 30, 2009) (unpublished per curiam) (noting a defendant "would not be able to demonstrate that the jurisdiction of this court would be properly invoked" without alleging one of Rule 2-4(c)'s grounds); *see also supra* note 7 (collecting additional cases in which petitions were dismissed solely for non-compliance with Rule 2-4).

[9]Thus, this case does not present the question of "which appellate court in Arkansas is *the* 'state court of last resort.'" *Ante* at 1 (emphasis added). The relevant

-16-

unpacking the meaning of the word "decision" in § 1257 shows that the Court's interpretation, if correct, places a significant additional burden on the Arkansas Supreme Court.

The U.S. Supreme Court has made clear that in order to identify the "highest court . . . in which a decision could be had," it is necessary to look to what review, if any, is available to a particular losing party. For example, the U.S. Supreme Court had jurisdiction to issue a writ of certiorari directly to a Kentucky police court in *Thompson v. City of Louisville*, 362 U.S. 199 (1960). There, the police court fined Thompson ten dollars for loitering. Because this fine was less than twenty dollars, it was "not appealable or otherwise reviewable in any other Kentucky court." *Id.* at 202 (citing Ky. Rev. Stat. Ann. § 26.080). Thus, the U.S. Supreme Court granted Thompson's petition for writ of certiorari despite the lack of any decision beyond the ruling of the police court. *Id.* While the police court was obviously not the "state court of last resort" for all or even most Kentucky defendants, in Thompson's case it was the "highest court . . . in which a decision could be had." *See also Nash v. Fl. Indus. Comm'n*, 389 U.S. 235, 237 (1967) (finding jurisdiction because a per curiam "denial by the Florida District Court of Appeal apparently precludes further state review"); *Tucker v. Texas*, 326 U.S. 517, 518 (1946) ("Since he could not appeal to a higher state court [than the county court] this appeal . . . is properly before us.").

*Thompson*, *Nash*, and *Tucker* further show that while § 1257 requires a decision from the highest state court in which a decision can be had, the U.S. Supreme Court does not define "decision" to include a confirmation from a higher court that a procedural bar does, in fact, prevent a defendant's appeal. To be sure, the U.S. Supreme Court will not "indulg[e] in conjecture" over discretionary decisions of state supreme courts. *Stratton v. Stratton*, 239 U.S. 55, 56 (1915). However, none of the defendants in *Thompson*, *Nash*, or *Tucker* were required to attempt a procedurally-barred appeal in a higher state court simply to obtain a rejection, in order to satisfy §

---

question is which court was the "state court of last resort" *for Parmley*.

-17-

1257. The absence of these procedural denials did not prevent the U.S. Supreme Court from exercising jurisdiction. Therefore, the U.S. Supreme Court plainly does not consider the denial of a petition for failure to comply with procedural rules to be a "decision" of a higher court.[10] *Cf. O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999) ("[T]here is nothing in the [habeas] exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available.").

The U.S. Supreme Court's case-specific approach to identifying the highest court in which a decision could be had shows that the Court's focus on the "Arkansas Supreme Court's authority and jurisdiction," *ante* at 9, is misplaced. Rather, the Court should have identified a "decision" that a particular defendant—Parmley in this case—could have received. In nullifying Rule 2-4(c) and permitting defendants like Parmley who cannot satisfy Rule 2-4(c) to file a petition, the Court may have inadvertently made such a decision available to these defendants. However, to remain consistent with the definition of "decision" in cases like *Thompson*, the Court must further hold that, regardless of Rule 2-4(c)'s limitations, the Arkansas Supreme Court will examine the merits of such a petition and decide whether to grant review in its discretion. *But see supra* note 7. These decisions, unlike procedural denials, fall within *Stratton*'s requirement that a defendant allow a state supreme court the opportunity to exercise its discretion to review, before petitioning for a writ of certiorari. 239 U.S. at 56-57. Only if the Arkansas Supreme Court would issue such a discretionary decision would the Court's interpretation of Arkansas procedure make available to every defendant, including Parmley, a "decision" from the Arkansas Supreme Court.[11]

---

[10]The parties apparently understand that a procedural denial is not a "decision," since it is undisputed that the Arkansas Supreme Court's order on May 20, 2004, refusing to direct the clerk to file Parmley's belated petition for review, did not trigger the U.S. Supreme Court's certiorari jurisdiction.

[11]In declining to use a case-by-case method to identify the highest court in Arkansas for each defendant, the Court is not "merely clarifying when the statute of limitations began running for some prisoners," *ante* at 11, but rather it is defining the

Under the Court's interpretation, the Arkansas Supreme Court would be required to render a "decision" on every petition for review.[12]  Evaluating the discretionary factors discussed in a non-compliant petition, rather than simply denying the petition for failure to comply with Rule 2-4(c), would necessarily require significantly more time and effort.  Should the Arkansas Supreme Court continue to enforce Rule 2-4(c) strictly by not considering discretionary factors, the issue presented in this case could return to us because such procedural denials are not "decisions" of a higher court.  Only if, as the Court reads the rules, the Arkansas Supreme Court *discretionarily* denies petitions filed contrary to Rule 2-4(c)'s "must allege" provision would the Arkansas Supreme Court remain the "highest court . . . in which a decision could be had" for defendants such as Parmley.

Under the interpretation I propose, a decision from the Arkansas Supreme Court was unavailable to Parmley, for there is no dispute that he could not file a petition for review that complied with the text of Rule 2-4(c).[13]  Most Arkansas criminal

---

U.S. Supreme Court's jurisdiction to review cases from all Arkansas courts.  The Court effectively holds that the U.S. Supreme Court may never review an Arkansas Court of Appeals decision.

[12]The Court's two choices for a habeas petitioner, *ante* at 10, amount to a red herring.  When a defendant who lacks any Rule 2-4(c) grounds is considering whether to petition the Arkansas Supreme Court for review, his salient concern is continuing his direct appeal and avoiding a final judgment, not the potential statute of limitations for filing his habeas petition.  As a result, his only real choices are to (1) "petition the Arkansas Supreme Court for discretionary review based on other factors," *ante* at 10, or (2) abandon all direct appeals and allow the judgment to become final.

[13]In this respect, Parmley's case is distinguishable from *O'Sullivan*, which held that "the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable." 526 U.S. at 848.  While the parties in *O'Sullivan* disputed whether the petitioner could file a procedurally proper petition, here there is no dispute.  *Ante* at 7.  Additionally, Arkansas does not have "a discretionary review system . . . *without more*."  Rule 2-4(c) provides additional restrictions on filings, restrictions not present in Illinois.

-19-

defendants likely will be able to comply with Rule 2-4(c) and therefore receive a decision from the Arkansas Supreme Court. However, Parmley is like the defendant in *Thompson*: state rules rendered a lower court the "highest court . . . in which a decision could be had." Since there was no further decision that Parmley could receive from a higher court, he had 90 days from the Arkansas Court of Appeals' denial of his petition for rehearing to petition the U.S. Supreme Court for a writ of certiorari. I would hold that because Rule 2-4(c) prohibited Parmley from petitioning the Arkansas Supreme Court, his judgment did not become final for the purposes of 28 U.S.C. § 2244 until after that 90-day period expired. His petition is therefore timely, and should be remanded for consideration on its merits.[14] I respectfully dissent.

—————————————————

—————————————————

[14]Though I find that Parmley's petition was timely, I too would hold that he was not entitled to the stay-and-abeyance procedures defined in *Rhines v. Weber*, 544 U.S. 269 (2005). Stay and abeyance applies only to "mixed" petitions, where "a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not." *Id.* at 271. However, Parmley's petition is not a mixed petition; it contains only exhausted claims, and neither Norris nor the district court suggested otherwise. Indeed, Parmley can only point to minor semantic differences between the claims he raised in state court and the claims in his petition. *See* Appellant Br. at 21 (distinguishing between failure "to seek a suppression hearing" and to "file a motion to suppress," and between "crime lab technician" and "chemist"). Since Parmley's petition does not contain unexhausted claims, stay and abeyance was not appropriate.